**Wayne L. BARGER, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

**Civ. A. No. 83–0167–L.**

United States District Court, W.D. Virginia, Lynchburg Division.

Nov. 19, 1984.

---

**6.** Oliver was convicted of manslaughter nearly nine years ago, on January 9, 1976.

**1155**

Donald W. Huffman, Nate L. Adams, III, Bird, Kinder & Huffman, Roanoke, Va., for plaintiff.

Jay T. Swett, McGuire, Woods & Battle, Charlottesville, Va., Gary S. Marshall, McGuire, Woods & Battle, Richmond, Va., for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

Wayne L. Barger, a former employee of the General Electric Company ("G.E."), has filed this action against G.E. for breach of an employment contract. Barger is a resident of Virginia. General Electric is a New York corporation doing business in Virginia and elsewhere. Jurisdiction is founded on diversity between the parties under 28 U.S.C. §§ 1332 and 1391.

Barger alleges that the terms of his employment were governed by an employee relations manual and other policies and procedures. Barger was laid off from his job with G.E. in the fall of 1982. He claims that through this layoff and its subsequent acts G.E. violated the terms of his employment contract, breached the implied covenants of good faith and cooperation contained in that contract, and tortiously and wrongfully discharged him in retaliation for filing an employee grievance.

Defendant filed a Motion to Dismiss the Complaint for failure to state a claim on which relief can be granted. Since that time, the Plaintiff has twice amended his Complaint. Although Defendant has not filed a formal Motion for Summary Judgment, the Memoranda of Law submitted by both parties deal with evidence outside the pleadings. Therefore, Defendant's Motion to Dismiss will be treated by this Court as a Motion for Summary Judgment.

### I. *Statement of Facts*

Barger began his employment with G.E. on September 9, 1959. At the time he was employed (but prior to starting work) Barger was given a copy of the General Electric Employees Handbook (the "Handbook"). The Handbook contains many of the policies and procedures of G.E. Some of these policies apply to all G.E. plants and are incorporated into collective bargaining agreements; other policies are local in nature. The policies in the Handbook are taken from the G.E. Management Relations Manual.

The Handbook is distributed to all new employees at the time they apply for work or at their initial orientation. Although the policies in the Handbook are enacted by the management of G.E., there is an Employee Handbook Committee which recommends changes to the Handbook. The provisions of the Handbook are periodically revised. The latest revision was in 1979.

The Handbook provisions concerning reductions in force have not been substantially changed since Barger was hired in 1959. When reductions in force occur, it is the expressed policy of G.E. that all employees with seniority can retrace their personal path of progress.

When there is a surplus of personnel in a classification, or a reduction in the working force, seniority with Lynchburg General Electric is the major factor determining who should be downgraded, laid off or transferred. If you are one of those affected, you will be given at least one week's notice or one week's pay (or a combination of days and pay equivalent

to one week) at your prevailing rate before downgrades or layoffs are made due to a reduction in forces.

If you have been promoted and your job is declared surplus, you are entitled to displace the shortest service employee in your current classification if your length of service permits. If not, you can then displace the shortest service employee in the next lower classification you have satisfactorily held (in other words, you may retrace your personal path of progress). Displacement of employees at the lowest classification is strictly by seniority and shift, providing that the employee is able to meet the requirements of the job assigned.

In most cases, seniority dates are the same as continuous service dates except in certain cases of broken service or prior employment at other G.E. locations.

General Electric Employee's Handbook at 16–17. If an employee's former position has been reclassified, the new position remains on the employee's path of progress. All of these procedures are detailed in the General Electric Management Relations Manual, Section 600–III.

When G.E. instituted a reduction in force in November of 1982, Barger held the position of Mechanical Technician. This position had a pay grade of LG–10 and a job code of 9509. Barger was in the Engineering Division. He was surplused from this position, and G.E. attempted to trace Barger's path of progress in order to find a job for which he was eligible under the layoff provisions of the Handbook.

There are three components to the job classification system at G.E. There is the title, such as a Mechanical Technician. Each position also has a pay grade rating. The "LG" rating refers to non-exempt salaried positions; an "LH" rating refers to hourly positions. The number following the LG or LH indicates the pay classification within the rating. The final component is a four-digit job classification code used for all employee records.

G.E. determined that Barger had seniority for an LH–21 Coil Winder Set-Up posi-

tion, a job that Barger held in 1966. Barger was offered this position. Because this job was more than four grades below his current pay level, the Handbook provided an alternative to accepting the lower job. Barger could instead elect "voluntary lack of work" status which gave him recall rights for five years to any position in his path of progress. Barger chose this option and pursued company grievance procedures to challenge G.E.'s determination that this was the highest level position he could obtain.

Barger asserts that G.E. did not offer him a position that was within his path of progress and to which he was entitled under the terms of the Handbook. Barger held a position of Mechanical Technician, pay grade LG–09, from March, 1968 to 1971. His employee records show that the job classification for this position was 9599.

In 1969 there existed a position entitled LG–9½ Model Shop Technician, which carried the job classification number 9599. This position was subsequently re-evaluated and reclassified as an hourly position, LH–32 Model Maker, job classification number 4520. At the time of the reduction in force in 1981, there were three temporary LH–32 Model Maker positions open in the Engineering Division. These positions became permanent positions sometime after Barger was terminated.

There is no dispute that Barger is well-qualified for the LH–32 Model Maker position. His job as a Mechanical Technician involved substantially the same work as a Model Maker and required less supervision. G.E. contends, however, that Barger never held the LH–32 Model Maker or the LG–9½ Model Shop Technician positions and was, therefore, not entitled to recall as a Model Maker. G.E. points out that Barger's former position as a LG–09 Mechanical Technician was typically given a job classification of 9E99, and that the job description for a Model Maker is different from the job description for a Mechanical Technician. But G.E. cannot explain why Barger's employee records indicate that one of Barger's previous positions had the same job classifica-

tion number as the position that was reclassified as an LH–32 Model Maker.

## II. *Summary Judgment*

Under Fed.R.Civ.P. 56 summary judgment is to be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of proof on these issues. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court must draw inferences most favorable to the party opposing the motion, *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), and the opposing party is to be given the benefit of all favorable legal theories invoked by the evidence. *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979). *See West v. Costen*, 558 F.Supp. 564 (W.D.Va. 1983).

G.E. bases its Motion for Summary Judgment on two distinct grounds. G.E. contends that there is no enforceable contract of employment between Barger and G.E. on which an action for breach of contract may be brought. Assuming that Barger does have an employment contract, G.E. argues that the reduction in force policy was properly followed.

██ This latter contention is easily disposed of. There is a clear conflict in the evidence of whether Barger once held an LG–9½ Model Shop Technician position which was later reclassified as an LH–32 Model Maker. G.E. has been unable to explain the apparent discrepancies in Barger's employee records. Barger is thus entitled, for the purposes of summary judgment, to the inference that he once held the position of Model Shop Technician. G.E. has admitted that there were openings for LH–32 Model Makers when Barger was laid off, that there have been subsequent openings for Model Makers in Barger's department, and that Barger has not been offered these positions. Barger thus presents a colorable claim that the reduction in force policy was not followed in his case.

G.E.'s other argument presents a more complex question. In order to recover Barger must also establish that he has an employment contract with G.E. and that the provisions of the Handbook constitute the enforceable terms of that contract. Barger readily concedes that no employment contract exists which specifies a fixed duration for employment. He admits that there was never a written, signed employment agreement, negotiated in advance, which sets out all the terms of his contract. The employees at the Lynchburg plant are not covered by a collective bargaining agreement, and management does not individually negotiate contracts with each employee. Barger was hired by G.E. in 1959 for an indefinite period at a fixed salary. He believes he is free to leave at any time. Barger contends, however, that the personnel policies contained in the Handbook constitute an enforceable contract of employment. G.E. argues that the Handbook cannot, as a matter of law, constitute an enforceable contract. These arguments go directly to the nature of the employer-employee relationship.

## III. *Employee Handbooks and the At-Will Doctrine*

The long standing American rule has been that a general hiring for an indefinite term is terminable at the will of either party. This rule has been under severe attack throughout the United States in the past decade.[1] Many commentators have pointed out that the at-will doctrine epitomized the "freedom of contract" era of the late nineteenth and early twentieth century which applied laissez-faire economic principles to the labor context. The doctrines of this era culminated in cases such as *Adair v. United States*, 208 U.S. 161, 168, 28 S.Ct. 277, 278, 52 L.Ed. 436 (1908) and *Coppage v. Kansas*, 236 U.S. 1, 35 S.Ct.

---

1. *See* Lopatka, *The Emerging Law of Wrongful Discharge—A Quadrennial Assessment of the La-* bor Law Issue of the 80's, 40 Bus.Law 1 (1984).

240, 59 L.Ed. 441 (1915). Although most of the freedom of contract doctrines have since given way to employee protections in the workplace, as in *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), the at-will doctrine is still viable. *See* Note: *Protecting at Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harvard L.Rev. 1816 (1980).

There have been an increasing number of legislative or judicially recognized exceptions to the at-will doctrine in recent years. These exceptions include implied contractual obligations not to terminate for reasons violative of public policy, affirmative duties to terminate only in good faith, and actions in tort for wrongful discharge. The various approaches are outlined in the annotation *Modern Status Of Rule That Employer May Discharge At-Will Employee For Any Reason*, 12 ALR 4th 544 (1981). These challenges to the at-will employment doctrine present difficult questions of law and public policy, and Barger's complaint raises some of these issues. The question on this motion, however, is much more limited. The narrow issue presented is whether the employee handbook provisions can be enforceable, contractual obligations. While this is only an inquiry into the scope of implied contracts, it must be considered in light of the on-going controversy surrounding the at-will termination rule.

The jurisdictions that have considered this question are almost evenly split. Although many recent and thorough decisions have held that handbooks may in some circumstances create enforceable, contractual rights, there is no clear "trend" at this point in time. Because a number of jurisdictions refuse to enforce employee handbook provisions solely on the basis of the at-will rule, the approach of these courts must be understood in order to contrast the development of the rule in Virginia.[2]

The rationale used by courts in denying relief in employee handbook cases has varied substantially.[3] Some decisions merely state that if there is no defined term the employment is at will, and the employer can never be liable for an employee's discharge, regardless of the cause. Other decisions turn on the absence of consideration. This approach appears in two forms. The first argument is that there is no mutuality of obligation; since the employee is free to quit, the employer must be free to fire him. The second argument is that the employee promises his services in exchange for a salary and there must be an additional promise or other consideration by the employee which will support the additional promises by the employer. Finally, some courts have held that handbook provisions are unilaterally made and not bargained for, so they can be withdrawn at any time.

---

**2.** Jurisdiction in this case is based on diversity between the parties, so I am required to apply the law of Virginia. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** Courts in the following jurisdictions have held that an employee handbook does not generally vary on employment at-will:

Alabama, *White v. Chelsa Industries*, 425 So.2d 1090 (Ala.1983); District of Columbia, *Prouty v. National Railroad Passenger Corp.*, 572 F.Supp. 200 (D.D.C.1983) and *Uriarte v. Perez-Molina*, 434 F.Supp. 76 (D.D.C.1977); Florida, *LaRocca v. Xerox Corp.*, 587 F.Supp. 1002 (S.D. Fla.1984) and *Muller v. Stromberg Carlson Corp.*, 427 So.2d 266 (Ct.App.Fla.1983); Georgia, *White v. I.T.T.*, 718 F.2d 994 (11th Cir.1983); Illinois, *Sargent v. Illinois Institute of Technology*, 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1979); Indiana, *Shaw v. S.S. Kresge Co.*, 167 Ind.App. 1, 328 N.E.2d 775 (1975); Kansas, *Johnson v. National Beef Packing Company*, 220 Kan. 52, 551 P.2d 779 (1976); Maine, *Terrio v. Millinocket Community Hospital*, 379 A.2d 135 (Me.1977); Montana, *Gates v. Life of Montana Insurance Co.*, 638 P.2d 1063 (Mont.1982); Nebraska, *Mau v. Omaha National Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980); North Carolina, *Cote v. Burroughs Welcome Co.*, 558 F.Supp. 883 (E.D.Pa.1982) and *Williams v. Biscuitville, Inc.*, 40 N.C.App. 405, 253 S.E.2d 18 (1979); Pennsylvania, *Wells v. Thomas*, 569 F.Supp. 426 (E.D. Pa.1983); Tennessee, *Whittaker v. Care-More*, 621 S.W.2d 395 (Ct.App.Tenn.1981); Texas, *Reynolds Manufacturing Co. v. Mendoza*, 644 S.W.2d 536 (Ct.App.Texas 1982). A number of other frequently cited cases are no longer good law in those jurisdictions. See footnote 8, *infra*.

The decision of the Supreme Court of Kansas in *Johnson v. National Beef Packing Company*, 220 Kan. 52, 551 P.2d 779 (1976) is consistently cited as a leading precedent rejecting implied contracts based upon employee handbooks. It is also typical of these decisions. The plaintiff in *Johnson* accepted employment in October, 1971. He knew he was free to leave at any time. The plaintiff injured his shoulder in March of 1972 and was transferred to a less strenuous job. A few days later, however, he was temporarily assigned to a job which required heavy lifting. When he told his supervisor that he was physically incapable of doing such work, he was discharged. Johnson premised his suit on the Company Policy Manual, distributed to all employees in the late spring of 1972, which stated that "No employee shall be dismissed without just cause." He asserted that this manual was the basis for an implied contract. *Id.* at 54, 551 P.2d 780–781.

The court first noted the general rule that in the absence of an express or implied contract between an employee and his employer covering the duration of the contract, the employment is terminable at the will of either party, and the employee has no cause of action for his discharge. *Id.* at 54, 551 P.2d 781. The court then stated that:

> [The manual] appears to be a general statement of company policies dealing with employee's benefits, insurance, vacations, holidays, etc. as well as general operating procedures and plant rules ... We find nothing in the manual expressly providing for a fixed term of employment, nor is there language from which a contract to that effect could be inferred.
>
> \*   \*   \*   \*   \*   \*
>
> Moreover, as we have previously pointed out, the manual was not published until long after plaintiff's employment. It was only a unilateral expression of company policies and procedures. Its terms

were not bargained for by the parties and any benefits conferred by it were mere gratuities. Certainly, no meeting of the minds was evidenced by the defendant's unilateral act of publishing company policy.

*Id.* at 55, 551 P.2d 782. Because Johnson had no contract, he had no cause of action.

Nearly every opinion cited by G.E. as holding that employee handbooks are not contractually binding is as terse and limited in its analysis as the *Johnson* decision.[4] A review of these cases reveals that those jurisdictions treat the at-will employment doctrine as a substantive rule of contract law which can only be varied by a contract providing for a definite term. This is simply not the law in Virginia.

## IV. *The At-Will Doctrine in Virginia*

■ Virginia has long followed the majority rule that a general hiring is terminable at will. *Conrad v. Ellison-Harvey Co.*, 120 Va. 458, 466, 91 S.E. 763, 766 (1917). While an action for wrongful discharge in breach of contract has always been available where the employment is for a specific duration, *Id.* at 463, 91 S.E. 766, it is a settled doctrine that where no specific time has been fixed determining the duration of the employment, it is presumed to be an employment at-will, terminable at any time by either party. *Hoffman Specialty Co. v. Pelouze*, 158 Va. 586, 594, 164 S.E. 397, 399 (1932).

■ But the at-will doctrine is not a substantive rule of law in Virginia. It is merely a presumption of the intent of the parties. As a presumption, it is rebuttable. *Id.*, 158 Va. at 594, 164 S.E. 399.

In the recent case of *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 297 S.E.2d 647 (1982), the Virginia Supreme Court reaffirmed the holding of *Hoffman* that the at-will doctrine is merely a rebuttable presumption. *Sea-Land* held that there *can*

---

**4.** For example, in *White v. I.T.T.*, the court concluded without discussion that "Clearly White was an employee terminable at will. As such, any executory promises arising out of the employment relationship, including a promise to reinstate after maternity leave, were wholly unenforceable." 718 F.2d 994, 997 (11th Cir.1983).

be an enforceable contract for employment if the parties intend something other than an at-will hiring. One of the strongest examples of this idea is *Norfolk Southern Railway Co. v. Harris*, 190 Va. 966, 59 S.E.2d 110 (1950). Harris was employed by Norfolk Southern for 46 years and served continuously until his discharge. His contract of employment contained the following provisions dealing with job security:[5]

> (a) Engineers will not be disciplined or dismissed from the service without a just cause. They will be given a hearing within five days if removed from service pending investigation and may hear evidence submitted. They will be promptly notified in writing of the action taken against them, and should the charge be unfounded, they will be paid for the time off.

190 Va. 969–70, 59 S.E.2d 111.

The court held that there *was* a fixed duration of employment, and that the employment was *not* at will.

> [the employment] was, by the terms of the contract, to continue until the plaintiff gave to the defendant just cause to end it. The result of being discharged after long years of service in a particular occupation can well be serious. The defendant's agreement that it would not discharge plaintiff without just cause was a thing of value to him, a safeguard against the loss and embarrassment to be expected from an arbitrary discharge. The defendant's agreement that it would not be done was a term of plaintiff's employment, compensation for his work which he had earned along with his wages. The defendant ought not to take that promised reward from him without incurring a penalty for violating its agreement.

190 Va. 976, 59 S.E.2d 114–115.

The extent to which the at-will doctrine is limited in Virginia can be further illustrat-

ed through the court's discussion of consideration and mutuality of obligation:

> It was a promise in return for services which the plaintiff performed and which furnished sufficient consideration for a binding contract. In such case the doctrine of mutuality is inapplicable. 12 Am.Jur., Contracts, § 14, p. 512. Cf. *Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, at page 585, 194 S.E. 727, at page 731, 114 A.L.R. 1291.

190 Va. 976, 59 S.E.2d 115.

The *Kiser* case, cited by the court in *Norfolk Southern Railway Co. v. Harris*, involved union recruitment. The union promised an employee that if she joined the union and then lost her job because of joining, the union would continue her salary until she was employed again. The court concluded that the risk of job loss was a detriment to the employee, and that increased membership was a benefit to the union. This was sufficient consideration to support the agreement. The fact that the union promised more than it asked for in return did not detract from the sufficiency of the consideration. *Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, 583–85, 194 S.E. 727, 731 (1938).

The question of consideration in employment contracts also arose in *Twohy v. Harris*, 194 Va. 69, 72 S.E.2d 329 (1952), a decision which was affirmed in *Sea-Land*.

> *Twohy* involved an employee who threatened to resign because of inadequate compensation. The employer promised to hold certain corporate stock for the benefit of the employee if he would agree to continue his employment. We held that the employer's promise concerning the stock was supported by consideration when the employee refrained from exercising his right to resign and continued to perform the services required of him. We quoted with approval the rule that:

**5.** Harris was only aware of these provisions because he saw them in an employee handbook. They were, however, part of a contract collectively bargained by the Brotherhood of Locomotive Engineers. Petition for Appeal to the Su-

preme Court of Virginia, Record No. 3643 at 31, *Norfolk Southern Railway Co. v. Harris*. The Supreme Court's decision was thus based upon the assumption that a written contract existed.

[W]here one makes a promise conditioned upon the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality, and the promisor is liable .... [U]pon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration which renders the promise obligatory.

194 Va. at 81, 72 S.E.2d at 336. We believe this rule is applicable to the present case and demonstrates that O'Neal's act of resigning furnished adequate consideration for Sea-Land's promise to employ her in the teletype operator/messenger position.

224 Va. 350, 297 S.E.2d 651.

■ These cases, when considered together, establish several important principles of Virginia law. First, an employer may make several different promises in addition to a promise of salary in exchange for the employee's single promise to faithfully render his services; there is no failure of consideration so long as both parties have made *some* obligation. Second, an employer can contractually surrender his power to terminate at-will. Even if the employee can still quit at will, the contract is not void for lack of consideration; there is no requirement of complete mutuality of obligation.[6] Third, an employee's continued service and his failure to exercise his power to terminate his employment is sufficient consideration for an additional promise by the employer which modifies the terms of the employment contract.

These three principles stand in stark contrast to the ideas that pervade cases such as *Johnson* where a simple citation of the at-will rule is enough to defeat an employee's suit which is based upon handbook provisions. Virginia courts have never accepted the at-will doctrine as a substantive rule of law. They have instead applied traditional rules of contractual interpretation to the employment context.

## V. Enforcement of Employee Handbook Provisions

The Supreme Court of Virginia has never expressly decided whether the terms of a layoff and recall policy in an employee handbook constitute contractual terms that rebut the presumption of at-will employment.[7] *Frazier v. Colonial Williamsburg Foundation,* 574 F.Supp. 318, 320 (E.D.Va. 1983). But in the case of *Hercules Powder Co. v. Brookfield,* 189 Va. 531, 53 S.E.2d 804 (1949), the court enforced the provisions of an employee handbook involving severance pay. Hercules adopted a plan to pay severance benefits to employees who were terminated because of changes in work force requirements. This plan was circulated to all employees as part of a

---

**6.** Although this idea is not easily understood in the context of industrial employment, it is similar to the concept of tenure in the academic community. When a college grants a professor tenure, it is giving away its right to terminate the professor at will. The college usually retains the power to discharge the professor for specified causes. But so long as the professor faithfully performs his duties he usually has job security. Even though the professor is free to leave and his term of employment is indefinite, tenure rights are generally viewed as enforceable contract rights. *Knowles v. Unity College,* 429 A.2d 220 (Me.1981).

**7.** Counsel have each pointed to Virginia circuit court decisions in support of their respective arguments. Because of the procedural posture of each case, they provide very little guidance as to how the Supreme Court of Virginia would treat this question. *Quash v. General Electric Company,* Law No. LF–1578 (Circuit Court for the City of Richmond, Division I), was decided on defendant's demurrer. Plaintiff's petition for appeal to the Supreme Court of Virginia was denied without oral argument. *Quash v. General Electric Company,* Record No. 831685 (April 25, 1984). Similarly, *Barker v. Blue Cross, et al,* Law No. 82–8587 (Circuit Court for the City of Roanoke) was decided by a denial of the defendant's demurrer. Letter Opinion of Judge Jack B. Coulter, August 30, 1983.

These decisions are not binding on this court. *Louthian v. State Farm Mutual Insurance Company,* 493 F.2d 240 (4th Cir.1973); 19 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 4507 at 96 (1982 ed.). In addition, I do not find them particularly helpful. In attempting to determine the substantive law of Virginia I will rely on the relevant holdings of the Virginia Supreme Court and resolve this question as I believe that court would. *See* 19 Wright, Miller & Cooper, *supra* at 89–92.

revised Employees Handbook. It is important to note that the Handbook also contained a provision that the plan was "subject to discontinuance or change from time to time." *Id.*, 53 S.E.2d at 807.

The U.S. Government took operational control of one of Hercules' plants and a reduction in force occurred. Some employees were laid off and were paid dismissal wages. Others, including Brookfield, accepted jobs with the Government starting on the date of the plant shutdown. Brookfield was denied termination pay. The court concluded that the development of the termination pay plan and its publication in the Handbook was more than a mere gratuity terminable at will. It was an offer, in reasonably sufficient terms, and the consideration for the offer was the employee's continued service in the plant. 189 Va. 539–40, 53 S.E.2d 808. The performance of the condition imposed constituted full and complete acceptance of the offer.

> ... Through and by compliance with the terms of the offer, plaintiff necessarily had to and did forego his right to seek and accept other employment and affirmatively met all conditions imposed by rendering service to the defendant for the period and until the specified time.

> Ample authority sustains the view that such a promise amounts to an offer, which, if accepted by performance of the service, fulfills the legal requirements of a contract.

> \* \* \* \* \* \*

> Plaintiff was under no obligation to continue in defendant's employ. That his reliance upon and continued service because of the promise is sufficient consideration to support the contract and makes the agreement complete is decided in *H.S. Kerbaugh, Inc. v. Gray,* 2 Cir. [ (1914) ] 212 F. 716, at page 717.

> \* \* \* \* \* \*

The Handbook stated in the chapter or heading dealing with "Industrial Relations Plan" that the plans in effect, "are subject to discontinuance or change from time to time." Relying upon this provision, defendant contends that it had a right to discontinue the dismissal wage plan on November 29, 1945, without legal liability to any employee who accepted employment with the Engineer Corps, though his term of employment with defendant had on that date met the requirement as to length of service and all other conditions.

> We agree that the right of discontinuance of the plan to any unearned benefits was reserved by defendant. Yet, it could not be discontinued and thus deprive the plaintiff of benefits of dismissal salary already earned as of the date of its discontinuance. That would constitute not mere discontinuances of the plan, but forfeiture of plaintiff's contractual rights amounting to a breach of the contract.

189 Va. 541–43, 53 S.E.2d 808–09.

Thus, the *Hercules* Court held that a promise by an employer amounted to an offer which was accepted by the employee's continued employment (i.e. foregoing his right to quit) and that the employee's continued service to the employer was sufficient consideration to support the contract. Of equal importance is the Court's finding that an employer's reservation of the right to unilaterally discontinue or change the plan could not affect the employee's benefits which had already accrued.

The more recent case of *Delany Foods, Inc. v. C.M. Ayers,* 220 Va. 502, 260 S.E.2d 196 (1979), dealt with general memoranda instead of employee handbook provisions, but it did cite *Hercules Powder* with approval. *Delany Foods* involved a memorandum that the employer circulated to all employees detailing a severance pay policy in the event of plant closings. The court found that the memorandum was intended to boost employee morale, avoid employee unrest, and ease the transition process. 220 Va. 505–08, 260 S.E.2d 200. It held that this memorandum constituted an offer which was accepted by the employee's continued service. *Id.* at 508–09, 260 S.E.2d 200. The court also concluded that it was

immaterial to the employer's liability that employment had commenced prior to the announcement of a severance pay plan. Any change in the compensation plan followed by the employee's continued service constituted an effective and binding agreement at the new terms of service. *Id.* at 511, 260 S.E.2d 201.

Although these two cases involved severance pay, the use of extrinsic memoranda or oral discussions to establish enforceable contract provisions has not been limited to questions of monetary benefits. *Hoffman Specialty Company* clearly established that every aspect of an employment contract may be determined from all of the circumstances bearing on the employer/employee relationship. Furthermore, these issues are usually questions of fact to be left to the jury.

> ... However far apart the authorities may be as to what constitutes a hiring for a definite period and what constitutes a hiring at will, terminable at any time, in the absence of precise and definite terms controlling the meaning of the contract, there is unanimity of agreement that, where the evidence is conflicting, the question is one for determination by the jury.

The following quotation from the case of *Tatterson v. Suffolk Mfg. Co.*, 106 Mass. 56, was cited with approval by this court in the case of *Conrad v. Ellison-Harvey Co.*, 120 Va. 458, 91 S.E. 763, Ann.Cas. 191SB, 1171, and the case of *Buchanan & Son v. Ewell*, 148 Va. 762, 139 S.E. 483 [(1927)]: "There was no express stipulation, either written or oral, which fixed the time for the continuance of the employment of the plaintiff by the defendant. That element of their contract depended upon the understanding and intent of the parties; which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact, to be drawn only by the jury. The whole question, What was the contract existing between the parties, at the time the defendants undertook to terminate the employment? was properly submitted to the jury."

*Hoffman Specialty Co. v. Pelouze*, 158 Va. at 595, 164 S.E.2d at 400.

As stated earlier, the question I must resolve on a motion for summary judgment is does the law of Virginia leave open for determination as a factual issue whether there were contractual restrictions on G.E.'s right to terminate the Plaintiff. In a case factually similar to this one, this question was answered in the affirmative by Chief Judge MacKenzie of the Eastern District of Virginia in the case of *Frazier v. Colonial Williamsburg Foundation*, 574 F.Supp. 318 (E.D.Va.1983). There the employee asserted that his discharge was without cause, in violation of his employment contract. He relied upon the expressed policies of the employer, past practices, oral assurances and the terms of the employee manual. On defendant's motion for summary judgment the court held that the terms of the employment contract were triable issues of fact. *Id.* at 320.

The *Frazier* court declined to rule as a matter of law that the provisions of the employee manual constituted an employment contract, because the Virginia Supreme Court has not addressed the question. However, the court did hold, based upon *Hercules* and *Delany*, that:

> This court may ask the jury to consider whether the employer, speaking through the employee manual, made a specific promise not to discharge employees except for good cause. In sum, the question of whether the employee manual, while not creating an employment contract as such, may have constituted a binding promise, remains an issue of fact for the jury to decide.

574 F.Supp. 321.

■ The approach taken by the court in *Frazier* is, in my opinion, essentially correct. It is also consistent with the numerous decisions from other jurisdictions which recognize that employee handbook

provisions may be enforceable.[8]  The existence *vel non* of a contract and the terms thereof are triable issues of fact, and that is the issue in this case.  The provisions in question, which relate to seniority during layoffs and reductions in force, are very common contractual provisions.  They are routinely included and enforced in collective bargaining agreements.  General Electric has included these provisions in their employee handbooks for decades, and have purportedly honored these provisions whenever layoffs are necessary.  The employees of General Electric, including Barger, have allegedly continued in their employment in the belief that the policies in the employee manual govern their relationship with G.E.  But G.E. counters that those policies are only gratuitous, and that they cannot be held liable for failing to comply with the manual.  Factual disputes such as these must be resolved by the trier of fact.

## VI.  *Conclusion*

Because this is the Defendant's Motion for Summary Judgment, I do not decide whether the particular reduction in force policy enacted by G.E. is, in fact, enforceable.  That is for the trier of fact to decide. I conclude only that Plaintiff Barger has stated a legal theory which, if supported by the facts, will entitle him to damages for breach of contract.  Therefore, the Defendant is not entitled to summary judgment.

An appropriate Order will issue.

**8.**  Courts in the following jurisdictions have expressly or impliedly held that the provisions of an employer-issued handbook can constitute enforceable contractual provisions:  California, *Cleary v. American Airlines,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980) and *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981);  Colorado, *Brooks v. Trans World Airlines,* 574 F.Supp. 805 (D.Colo.1983) and *Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265 (Colo. App.1984);  District of Columbia, *Eller v. Houston's Restaurant, Inc.,* 53 U.S.L.W. 2231 (D.D.C. 1984);  Illinois, *Enis v. Continental Illinois National Bank and Trust Co. of Chicago,* 582 F.Supp. 876 (N.D.Ill.1984) and *Carter v. Kaskaskia Community Action Agency,* 24 Ill.App.3d 1056, 322 N.E.2d 574 (1974);  Michigan, *Wiskotoni v. Michigan National Bank-West,* 716 F.2d 378 (6th Cir.1983) and *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980);  Minnesota, *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983);  Missouri, *Arie v. Intertherm,* 648 S.W.2d 142 (Mo.App.1983);  Nevada, *Southwest Gas Corp. v. Ahmad,* 668 P.2d 261 (Nev.1983);  New York, *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982);  New Mexi-

co, *Forrester v. Parker,* 93 N.M. 781, 606 P.2d 191 (1980);  Ohio, *Smith v. Teledyne Industries, Inc.,* 578 F.Supp. 353 (E.D.Mich.1984) and *Hedrick v. Center for Comprehensive Alcoholism Treatment,* 7 Ohio App.3d 211, 454 N.E.2d 1343 (1982);  Oklahoma, *Vinyard v. King,* 728 F.2d 428 (10th Cir.1984);  Oregon, *Yartzoff v. Democrat-Herald Publishing Co., Inc.,* 281 Or. 651, 576 P.2d 356 (1978);  South Dakota, *Osterkamp v. Alkota Manufacturing, Inc.,* 332 N.W.2d 275 (S.D.1983);  Tennessee, *Hamby v. Genesco, Inc.,* 627 S.W.2d 373 (Tenn.App.1981);  Utah, *Piacitelli v. Southern Utah State College,* 636 P.2d 1063 (Utah 1981);  Washington, *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984).

See also *Shah v. American Synthetic Rubber Corporation,* 655 S.W.2d 489 (Ky.1983).  Not all of these opinions apply the implied contract analysis that I believe is applicable in Virginia. In some cases the implied contract analysis overlaps discussions of public policy.  The two opinions which I believe best describe the implied contract approach are *Pine River State Bank v. Mettille* and *Thompson v. St. Regis Paper Co.*