**Nancy MANNIKKO, Plaintiff,**

v.

**HARRAH'S RENO, INC., a Nevada corporation, Defendant.**

**No. CV–R–83–359–ECR.**

United States District Court, D. Nevada.

Feb. 27, 1986.

Warren W. Goedert, Reno, Nev., for plaintiff.

Albert F. Pagni, Reno, Nev., for defendant.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Nancy Mannikko (Plaintiff) seeks damages from defendant Harrah's Reno, Inc. (Harrah's) for alleged retaliatory discharge because Plaintiff filed a sex discrimination complaint with the Nevada Equal Rights Commission (NERC) and the Equal Employment Opportunity Commission (EEOC). Plaintiff also seeks damages for claimed

breach of an implied contract of employment.

It should be noted at the outset that this is not a sex discrimination case. This is not a race discrimination case. The issues raised by Plaintiff are whether she was discharged because she had filed a sex discrimination complaint with NERC and with EEOC (which complaint has since been dropped) and whether Harrah's violated an implied employment contract which provided she would be treated fairly and have free right to promotion within the organization.

The retaliatory discharge claim is brought under Title VII, 42 U.S.C. § 2000e et seq., and as a pendent claim under the parallel State statutes, NRS §§ 613.-310–.430. The contract claim also is a pendent State claim. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1343(a)(4). The pendent claims are brought under the pendent jurisdiction of this Court.

■ A court trial was held in this case commencing on November 12, 1985, and continuing intermittently until December 18, 1985.*

The relevant occurrences of this case commenced when Plaintiff contacted the Personnel Department of Harrah's seeking employment in accordance with her previous experience as a secretary. She was advised that there were no job openings for secretaries at that time but that Harrah's was hiring hotel maids. She was told by Harrah's personnel representatives that if she were to take a job as a maid and perform satisfactorily, she might later seek a transfer to a secretarial position if one opened up.

Plaintiff then proceeded to file her application with Harrah's for employment as a maid. She was subsequently interviewed by Luis Rimoli, a Harrah's employment interviewer. According to Harrah's hiring practices Mr. Rimoli observed Plaintiff during the course of the employment interview and rated her as a "5" (meeting Harrah's standards) as to maturity, job stability and

---

* At the outset of the trial the Court, by a ruling from the bench, resolved certain questions which had been raised respecting whether proof would be permitted as to certain issues. These questions had been raised in the pretrial order and in the trial briefs filed by the parties. The Court at that time ruled as follows:

a. Plaintiff was to be allowed to prove violation of an express or implied employment contract. This appears to be pleaded through the pleading about Harrah's "pledges" to its employees.

b. Plaintiff was not to be allowed to prove emotional distress or punitive damages with respect to violation of the employment contract. Such is not allowed by law unless there is a related tort and no related tort was pleaded. The pleading was not adequate to raise this issue. It is the pleadings that determine whether a particular claim for relief sounds in contract or in tort. *Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co.,* 596 F.Supp. 344, 347 (D.Nev.1984).

c. Plaintiff was not to be allowed to prove evidence of violation of a covenant of good faith and fair dealing in relation to the employment contract. While such may be implied in the contract, that claim was never made an issue in the complaint and was not made an issue in the pretrial order. Harrah's affirmative defense of good faith is not sufficient to raise this as an issue.

d. Evidence of punitive damages and emotional distress was not to be allowed with respect to a claim of violation of a covenant of good faith and fair dealing because, as mentioned above, that issue was not properly before the Court.

e. The Court did permit evidence to be received on the issue of punitive damages and mental and emotional distress on the claim of violation of the parallel Nevada statutes, NRS §§ 613.310–.430. It is clear that the complaint does raise a claim for punitive damages and mental and emotional distress for violation of the statutes. The Court originally contemplated the possibility of having post-trial briefs filed as to whether it should consider the award of punitive damages and damages for mental and emotional distress for violation of the Nevada statutes. It does not now appear that such briefs would be useful.

f. If the suit had been brought as a private right of action where the plaintiff acts as a private attorney general, then evidence of emotional distress or punitive damages would not be allowed because the complainant would be seeking to enforce the statute. On the other hand, if the statute sets a standard of conduct the violation of which is a tort, then such proof might be allowed. *Hansen v. Harrah's,* 100 Nev. 60, 675 P.2d 394, 397 (1984); *Savage v. Holiday Inn Corp., Inc.,* 603 F.Supp. 311, 315 (D.Nev.1985).

personality, but rated her only as a "4+" (below Harrah's standards) for appearance. According to Mr. Rimoli's observation at the time of the interview, Plaintiff's hair was not clean, neat or combed, she was slightly overweight, and her clothing was not neat or tidy or coordinated. While Mr. Rimoli did not make any notations in the interview form he prepared with respect to specific deficiencies in Plaintiff's appearance, it is clear that he rated her a 4+ for appearance on the basis of these observations. He also noted that she had a rather "cold personality, very businesslike" and that he "would question her ability to work with the public."

At Harrah's a rating of 5 in appearance is required for public contact jobs, such as "21" dealers, hotel clerks and secretaries. Jobs such as hotel maids, food preparers, and the like, are not deemed public contact positions and do not require a 5 appearance rating.

Mr. Rimoli testified that he rated Plaintiff a 4+ for appearance because he felt that with a little attention to personal grooming she could bring herself up to a 5, meeting Harrah's standards. Plaintiff was not specifically told of her 4+ rating, but she was advised that if she wished to transfer to a public contact position, she would have to improve the grooming of her hair and lose a little weight. Plaintiff, who is a highly intelligent person, accepted the suggestions made by Mr. Rimoli without comment.

■ The preponderance of the evidence is that Harrah's employees at no time told Plaintiff she was "too ugly" to hold a public contact position or that she was "not fit for human consumption." Disqualification of employees from promotion to public contact jobs on that type of basis does not appear to be the policy or practice of Harrah's, although such promotions may be barred on a basis of sub-standard grooming, personal hygiene and unclean or unkempt attire. Harrah's requirements that public contact employees maintain appropriate standards of grooming are reasonable and are not unfair to any class of employees. Therefore, the requirements are lawful. *Gerdon v. Continental Airlines, Inc.*, 648 F.2d 1223, 1227 (9th Cir. 1981); *Jarrell v. Eastern Air Lines, Inc.*, 430 F.Supp. 884, 891 (E.D.Va.1977), *aff'd* 577 F.2d 869 (4th Cir.1978).

There are no written criteria for the appearance ratings system at Harrah's. Most of the judgments of appearance are to a considerable extent subjective, and different departments of the company may rate individuals according to different standards. If an employee applies for a transfer of jobs within the company, she is evaluated for appearance by both the transferor and the transferee departments. The evidence at trial indicated that these ratings are made on the basis of the observations of the department supervisors, rather than solely according to the original official rating entered into the personnel records by the employment interviewer at the time of hiring.

Harrah's policies are unclear as to the manner in which an official rating made at the time of hire may be changed. However, in this case it does not appear that the low appearance ratings given by the supervisors of the transferee departments (where Plaintiff sought transfers to new positions in the company) were controlled by the original personnel department ratings. Rather, they were based upon the personal observations of the particular department heads involved. There is no credible evidence that the original official personnel department rating of Plaintiff of 4+ for appearance (which was never changed) thwarted Plaintiff's numerous efforts to change jobs within the Harrah's organization.

■ The fact that Plaintiff was never told of the numerical appearance rating she received at the time of hire is irrelevant because that rating did not cause the rejection of her requested transfers. The requested transfers were denied because Plaintiff did not meet the appearance standards required by the particular transferee departments, as viewed by the department heads. Plaintiff was not damaged by rea-

son of not being told of the 4+ rating, for she had been advised that she would have to improve her grooming and lose some weight if she desired to transfer to a public contact job. The subsequent observations by the department heads involved in the requested transfers reflect in general terms the same sorts of complaints about Plaintiff's appearance as were originally noted by the employment interviewer, Mr. Rimoli.

While Mr. Rimoli rated Plaintiff a 5 in personality, as set forth above, he observed what he believed to be a cold personality and questioned her ability to work with the public. The heads of the departments to which she sought transfers made those same kinds of observations about Plaintiff's personality and the transfers were, at least in part, rejected on that account. It was felt that Plaintiff did not have the sort of personality to which customers and fellow employees would react favorably.

The principal thrust of the breach of contract claim of Plaintiff is that Harrah's violated the conditions of her employment contained in the pledges Harrah's made in a booklet which is given to all newly hired Harrah's employees. It is entitled "You and Your Job HARRAHS". These pledges include:

"...

2. Recognition of each person as an individual who will be treated with consideration and understanding.

3. Fair treatment of employees by all co-workers and supervisors.

    .      .      .      .      .

6. Promotion from within.

7. High moral standards in the conduct of our affairs.

8. The opportunity for the personal fulfillment and optimum development of each employee."

The gravamen of the contract claim is that, in employing Plaintiff, Harrah's promised fair treatment and the opportunity for promotion from within the company according to high moral standards. It is Plaintiff's claim that these conditions of her implied employment contract were breached because she was not told of her 4+ appearance rating, nor that a rating of less than 5 in appearance would bar her from a promotion to a public contact position.

■ There does appear to have been an implied employment contract between Plaintiff and Harrah's which included the provisions listed above. She was given the booklet at the time of her hiring and accepted the position in reliance upon the assurances by Harrah's set forth in the booklet. She was entitled to rely upon the pledges of Harrah's in these respects in accepting employment. Where an employer issues such a booklet to a new employee, and that employee is aware of its pertinent provisions, the booklet may be found to be part of the employment contract. *Southwest Gas Corp. v. Ahmad,* 99 Nev. 594, 668 P.2d 261, 261–62 (1983); *Barger v. General Elec. Co.,* 599 F.Supp. 1154, 1163–64 and n. 8 (W.D.Va.1984). However, as described above, Plaintiff suffered no damage by reason of the fact she was not told of the 4+ rating or the effect of such a rating. Therefore, the contract claim must fail.

We next turn to the issue of retaliatory discharge.

■ The Harrah's booklet also assures newly hired employees "maximum job security." It might be claimed that the alleged retaliatory discharge was in violation of the assurance of job security. However, Plaintiff has pressed her claim with regard to retaliatory discharge under Title VII, rather than under the implied contract of employment and the retaliatory discharge claim is therefore not considered here as a claim of breach of the implied contract of employment.

■ The retaliatory discharge claim is founded upon the proposition that because Plaintiff filed a complaint for sex discrimination against Harrah's, she was discharged. There is liability under Title VII if an employer discriminates against an employee because she has made a charge or assisted or participated in any manner in an investigation or proceedings with re-

spect to employment discrimination under Title VII. 42 U.S.C. § 2000e–3(a). The order and allocation of proof for an unlawful retaliation action is the same as in other Title VII suits. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982). The Plaintiff first must establish a prima facie case. This she does by showing:

a) That she protested employment practices as contrary to Title VII, i.e., she engaged in a protected activity.

b) Thereafter, she was subjected to adverse employment action by her employer, e.g., she was discharged.

c) A causal link existed between Plaintiff's protest and the employer's conduct. *Id.; Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984).

■ In this case, Plaintiff did make out a prima facie case of retaliatory discharge. Hired as a maid on April 2, 1982, she subsequently tried unsuccessfully to transfer to the Security Department as a security guard and to the Beverage Department as a bar attendant. Then, on December 15, 1982, she filed with NERC and EEOC a charge of sex discrimination by Harrah's. This constituted the protected activity Plaintiff had to show as part of her prima facie case. She was terminated by Harrah's on March 10, 1983. This satisfied the adverse employment action element of the prima facie case. To establish the requisite causal link, the evidence showed that Harrah's was well aware of Plaintiff's sex discrimination charge at the time she was terminated. Harrah's also knew that earlier, on October 13, 1982, Plaintiff had filed a reverse discrimination charge against it. Plaintiff had withdrawn that charge on January 31, 1983. The making of the charges by Plaintiff, the knowledge thereof by Harrah's, and the timing of Plaintiff's termination raised an inference that her protected activity was the likely reason for the adverse employment action.

■ Once a prima facie case has been established, the burden shifts to the employer to articulate legitimate nonretaliatory reasons for its conduct. *Cohen v.*

*Fred Meyer, Inc., supra* at 796. Harrah's fulfilled this burden by introducing evidence that Plaintiff's maid work had been substandard both as to quality and as to quantity. The employer having made such a showing, the burden of going forward then shifted back to Plaintiff to show that a discriminatory intent motivated the employer's action. This she could accomplish by showing that Harrah's explanation was a pretext, or by demonstrating that a discriminatory reason more likely brought about her termination. *Wrighten v. Metropolitan Hospital, Inc., supra* at 1354.

■ It is Plaintiff's contention that she was singled out for "write ups" in her personnel record and for inspections of her rooms after the NERC and EEOC complaint was filed in December of 1982. Harrah's supervisors testified that room inspections were done on a strictly random basis and not for the purpose of obtaining evidence to use as a pretext to discharge Plaintiff because of her complaint. It does appear that Plaintiff's rooms were inspected to a greater extent than would be expected on a purely random basis in view of the limited number of rooms which could be inspected in a given day by the available inspectresses and supervisors. It may have been by chance that her rooms were apparently inspected more frequently than the rooms of other maids, but the frequency of inspection of Plaintiff's rooms is some evidence that Harrah's might have intended to retaliate for the NERC and EEOC complaint by discharging her.

Thus, the allocation of burdens and order of presentation of proof rules governing Title VII cases have been satisfied in this case. Therefore, the Court reaches the ultimate question:

Did Harrah's fire Plaintiff in intentional retaliation for her filing the sex discrimination charge? *Cf. U.S. Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). The burden was on Plaintiff to prove by a preponderance of the evidence that the answer is affirmative. *Wrighten v. Metro-*

*politan Hospitals, Inc., supra,* at 726 F.2d 1354; *Cohen v. Fred Meyer, Inc., supra,* at 686 F.2d 796–97. The Ninth Circuit applies what is known as the "but for" causation test, which requires proof by the employee by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the discharge and that but for such activity she would not have been fired. *Kauffman v. Sidereal Corp.,* 695 F.2d 343, 345 (9th Cir.1982); *Wrighten, supra* at 1354.

It is Harrah's contention that the discharge of Plaintiff finally resulted from room inspections conducted on March 10, 1983, respectively by Jeff Buck, Executive Housekeeper, and Linda Shepherd, Shift Supervisor. However, a poor quality of work by Plaintiff had been previously observed and noted by Harrah's supervisors. Inspections on January 3, 1983, January 10, 1983, February 5, 1983, and February 9, 1983, had reflected substandard work by her.

■ Harrah's obviously maintains a very high quality hotel. The maids are closely supervised and there are many inspections to assure that high standards of room cleaning and maintenance are being met. The standards are very exacting, down to the requirement that there be a fresh rosebud in a vase in each room each day. Clearly, the inspections of the rooms which had been cleaned by Plaintiff often revealed a failure to meet the standards that Harrah's required. Plaintiff was well advised of what these standards were because she had been trained by an experienced maid before she was permitted to undertake the maid job on her own and had been counseled with respect to the quality of her work on several occasions. Harrah's is entitled to set whatever reasonable standards it wishes and to require its employees to meet those standards.

■ On the fateful day of March 10, 1983, a maid named Pauline Ross also was terminated for not meeting room cleaning standards. The basis of Ms. Ross' termination was an inspection by Harrah's supervisors made on that day on the same

floor on which Plaintiff worked. It is significant that another employee in similar circumstances was treated the same way as Plaintiff. *Apececheʋ. White Pine County,* 96 Nev. 723, 615 P.2d 975, 977–78 (1980).

There is a fairly substantial record that Plaintiff's work was not up to the standards Harrah's required for room cleaning by a maid. While it is a close case, the preponderance of the evidence is that Plaintiff was discharged for low quality work, rather than for filing the NERC and EEOC complaint and that the complaint was not a "but for" reason for the discharge.

■ Some of Plaintiff's personality traits which grated on other employees and supervisors have been mentioned above. In addition, during the course of her employment, Plaintiff made recurrent verbal complaints about Harrah's and her job and supervisors. She did not accept criticism or suggestions for improvement and was a disruptive force with respect to the Harrah's Hotel staff. She may have irritated her supervisors to a point where they decided to discharge her because of her poor personal relationships with fellow employees and supervisors and her attitude toward Harrah's. These seem more likely reasons for the discharge than the NERC and EEOC complaint. There have been inferences raised to support Plaintiff's allegations that she would not have been discharged but for the filing of the NERC and EEOC complaint, but the preponderance of the evidence is that that was not one of the reasons for the termination. Plaintiff has failed to show that the discriminatory intent to retaliate for the filing of the complaint motivated Harrah's action of discharging her. Harrah's evidence has persuaded the Court that Plaintiff would have been terminated even had she not complained to NERC and EEOC.

The foregoing shall constitute findings of fact and conclusions of law.

The Clerk shall enter judgment in favor of defendant and against plaintiff.