831 F.2d 291
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David F.G. LARKMAN, Plaintiff-Appellant,
v.
DYNALECTRON CORP., Defendant-Appellee.
 No. 86-3172.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 2, 1987.
Decided: Oct. 7, 1987.
 
 Sheldon I. Cohen (Peter M. Baskin on brief) for appellant.
 Wayne A. Schraeder (Burton J. Fishman, Gibson, Dunn & Crutcher, Stephen W. Robinson, Boothe, Prichard & Dudley on brief) for appellee.
 Before JAMES DICKSON PHILLIPS, ERVIN, and WILKINSON, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 This case arises out of the defendant Dynalectron Corp.'s termination of the employment of the plaintiff, David F.G. Larkman. Larkman appeals from the judgment of the district court, contending that the court erred in granting partial summary judgment for Dynalectron and in limiting the scope of Larkman's cross-examination of one of Dynalectron's witnesses at trial. Because we find both of these claims of error to be without merit, we affirm the judgment of the district court.[1]
 
 
 2
 Larkman was employed by Dynalectron from 1978 to 1985, when his employment was terminated. After his discharge, Larkman filed suit against Dynalectron, alleging, among other things, claims of age discrimination and breach of implied and express contracts of employment.
 
 
 3
 Pursuant to Dynalectron's motion, the district court granted summary judgment for Dynalectron on the claim for breach of implied contract of employment. The claims for age discrimination and breach of express contract of employment went to trial before a jury. Prior to trial, the district court granted Dynalectron's motion in limine to preclude Larkman from cross-examining Walther Ewalt, one of Dynalectron's officers and witnesses, concerning his indictment for bid-rigging and mail fraud. The jury returned a verdict for Dynalectron on both the age discrimination and breach of express employment contract claims. This appeal followed.
 
 
 4
 Larkman's first argument is that the district court erred in granting summary judgment for Dynalectron on Larkman's claim for breach of implied contract of employment. In his complaint, Larkman alleged that Dynalectron had entered into an employment contract with him, pursuant to which Dynalectron was obligated to retain Larkman in its employ until Larkman reached the age of seventy. Count III of the complaint alleged that this was an express contract, formed by the oral and written statements of the parties. Count IV alleged that the contract of employment was an implied contract. Larkman alleged that Dynalectron had breached the employment contract by discharging him before he reached the age of seventy.
 
 
 5
 According to Larkman's complaint, the implied contract of employment between Larkman and Dynalectron was formed by Larkman's reliance on certain of Dynalectron's policy statements, including its Statement of Corporate Mission and Philosophy of Management and its policy statement on retirement. In argument before the district court and this court, however, Larkman strenuously contended that the alleged implied contract was formed not only by Dynalectron's policy statements and Larkman's reliance on them, but also by oral and written agreements between the parties.
 
 
 6
 The sense of this argument escapes us. Whether there were oral or written agreements between the parties was relevant to Larkman's claim of an express contract of employment, but it had no relevance to the alleged implied contract. The district court allowed the claim for breach of express employment contract to go to the jury, and it also permitted Dynalectron's policy statements to be introduced into evidence in connection with the express contract claim. The jury apparently found that no express contract of employment had been formed, since it returned a verdict for Dynalectron on the express contract claim. It appears to us that Larkman had a full and fair opportunity to litigate his express contract claim; he will not be permitted to resurrect that claim at this late date through his efforts to include oral or written agreements between the parties as part of the basis for his implied contract claim.
 
 
 7
 Accordingly, in reviewing the district court's grant of summary judgment for Dynalectron on the implied contract claim, we consider only Dynalectron's policy statements and Larkman's alleged reliance on them as a possible basis for the implied contract of employment. Because we find that there is no genuine issue of fact as to whether an implied contract of employment could have arisen from Larkman's reliance on Dynalectron's policy statements, we affirm the district court's grant of summary judgment for Dynalectron on the claim for breach of implied contract of employment.
 
 
 8
 Under Virginia law, which applies in this case, contracts of employment are presumed to be at will if no specific term of employment is fixed. See, e.g., Bowman v. State Bank, 229 Va. 534, 331 S.E.2d 797, 798 (1985); Norfolk Southern Railway Co. v. Harris, 190 Va. 966, 59 S.E.2d 110, 114 (1950). An employer may, however, give up its right to terminate an employee at will. Although the Virginia Supreme Court has not yet addressed this issue, a number of federal district courts sitting in diversity in Virginia have held that under Virginia law, a relinquishment of the right to terminate an employee at will may, in some circumstances, be implied from an employer's policy statements or handbooks.[2] See Thompson v. Kings Entertainment Co., 653 F.Supp. 871, 874 (E.D.Va.1987); Thompson v. American Motor Inns, Inc., 623 F.Supp. 409, 416 (W.D.Va.1985); Barger v. General Electric Co., 599 F.Supp. 1154, 1163-64 (W.D.Va.1984); Frazier v. Colonial Williamsburg Foundation, 574 F.Supp. 318, 321 (E.D.Va.1983). As the court in Thompson v. American Motor Inns observed:
 
 
 9
 In absence of an express provision or specific contract setting a definite period of employment, the presumption of an employee's at-will status may be rebutted by presenting evidence which shows that the parties intended and/or understood that the term of employment was fixed by reference to some articulable standard or procedure. There must be evidence of a custom, practice or policy that governs the employer-employee relationship. Evidence sufficient to establish an implied contract concerning duration of employment effectively rebuts the presumption of at-will status and binds the employer to the terms of such a contract.
 
 
 10
 Thompson v. American Motor Inns, 623 F.Supp. at 416. An employee's continued employment is consideration sufficient to support an employer's implied promise not to terminate at will. See id. at 417; Barger, 599 F.Supp. at 1161. Whether an implied contract not to terminate at will has arisen from an employee's continued employment in reliance on an employer's policy statements or handbooks is a question of fact. See Barger, 599 F.Supp. at 1164; Frazier, 574 F.Supp. at 321.
 
 
 11
 With these principles in mind, we examine the employer policies on which Larkman bases his claim of an implied contract of employment. Dynalectron's Statement of Corporate Mission and Philosophy of Management contains nothing more than general representations concerning Dynalectron's fairness and honesty in dealing with its employees. No relinquishment of the right to terminate Larkman at will could be implied from these general statements. Dynalectron's policy on retirement contains a statement that "[e]mployees may at their option continue employment after age 65 to age 70," but no promise on the part of Dynalectron to employ Larkman until he reached the age of seventy can be implied from this statement. In its policy on employment, with which Larkman testified he was familiar while employed at Dynalectron, Dynalectron specifically stated that its employees were employed "for an indefinite term," with "no right to tenure, or duration of employment." The policy further stated that these terms of employment could be modified only by a written agreement signed by an authorized officer of Dynalectron. There was no such written agreement modifying the at-will status of Larkman's employment in this case.
 
 
 12
 Our review of Dynalectron's policy statements convinces us that there was no genuine issue of material fact that would preclude summary judgment for Dynalectron on Larkman's claim for breach of implied employment contract. Larkman did not present sufficient evidence of an implied contract for his employment until the age of seventy to permit a jury to return a verdict in his favor on the implied contract claim. Under these circumstances, summary judgment for Dynalectron was proper. See Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).
 
 
 13
 We next consider Larkman's contention that the district court erred in granting Dynalectron's motion in limine to limit the cross-examination of Walther Ewalt, one of Dynalectron's officers and witnesses. At the time that Larkman's claims of age discrimination and breach of express employment contract were tried, Ewalt had been indicted for bid-rigging and mail fraud, and was on leave of absence from Dynalectron. According to Larkman, Ewalt was the Dynalectron officer who had promised, on behalf of the company, to employ Larkman until he reached the age of seventy. Larkman also alleged that Ewalt had made certain statements that were relevant to his claim of age discrimination.
 
 
 14
 Prior to trial, Dynalectron moved the court for a ruling that Larkman could "make no reference to nor question any witness concerning the indictment of G.W. Ewalt nor be permitted to pose any question to any witness regarding the job status of Mr. Ewalt which would require or lead to references to such indictment." When this motion was argued, Larkman's counsel contended that he should be permitted to question Ewalt about his bid-rigging and mail fraud activities for purposes of impeachment under Fed.R.Evid. 608(b). Counsel for Larkman made clear that he did not intend to question Ewalt about the indictment itself, but he argued that he should be allowed to ask Ewalt about the misconduct underlying the indictment. The district court, however, granted the motion in limine, on the ground that under Fed.R.Evid. 403, the possible relevance of Ewalt's bid-rigging and mail fraud activities would be substantially outweighed by the dangers of unfair prejudice, confusion and delay.
 
 
 15
 Under Fed.R.Evid. 608(b), a witness may be cross-examined about specific instances of conduct for the purpose of attacking or supporting his credibility, if the conduct is probative of the witness's character for truthfulness or untruthfulness. The rule makes clear that the decision whether to permit such cross-examination is "in the discretion of the court." Fed.R.Evid. 608(b). The advisory committee note to Rule 608(b) indicates that in deciding whether to permit cross-examination concerning specific instances of conduct, the district court should be guided by the "overriding protection" of Fed.R.Evid. 403. Fed.R.Evid. 608(b) advisory committee note.
 
 
 16
 In this case, Larkman contends that the district court abused its discretion in refusing to allow cross-examination concerning Ewalt's bid-rigging and mail fraud activities for purposes of impeaching Ewalt's credibility. Larkman argues that these specific instances of misconduct were probative of Ewalt's character for untruthfulness. He further maintains that the jury's assessment of Ewalt's credibility was of major importance in the case, because the jury's decision depended in large part upon resolving conflicts in the testimony given by Ewalt and Larkman.
 
 
 17
 In our view, however, the district court acted within its discretion in limiting the scope of Larkman's cross-examination of Ewalt. The district court recognized that allowing Ewalt to be questioned about his bid-rigging and mail fraud activities would implicate the concerns addressed in Fed.R.Evid. 403, specifically, the dangers of unfair prejudice, delay and jury confusion. In the district court's opinion, these dangers substantially outweighed the relevance of Larkman's proposed cross-examination to the issue of Ewalt's credibility. In view of the fact that Larkman's attempted questioning concerning Ewalt's bid-rigging and mail fraud activities ranged far afield of the issues presented at the trial, we cannot say that the district court abused its discretion in refusing to allow Larkman to pursue this line of questioning.
 
 
 18
 Because we find no error in the proceedings below, we affirm the judgment of the district court.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 In addition to the substantive claims of error advanced in this appeal, Larkman also moved to strike Dynalectron's appellate brief as untimely. Because Larkman subsequently withdrew his motion to strike, we see no need to address the merits of that motion in this opinion
 
 
 [2]
 We express no opinion as to whether the Virginia Supreme Court would recognize an exception to the employment-at-will doctrine when an employee relies upon terms in an employer's policy statements or handbooks suggesting that the employer has relinquished its right to terminate at will. However, as the text of this opinion makes clear, if such an exception to the at-will doctrine exists under Virginia law, the policy statements on which Larkman relies for his claim of an implied employment contract furnish no basis for application of the exception in this case