# Wytheville

## HOFFMAN SPECIALTY COMPANY, INCORPORATED v. HENRY L. PELOUZE.

June 16, 1932.

Present, Campbell, C. J., and Holt, Epes, Browning and Chinn, JJ.

The opinion states the case.

*Williams & Mullen, Guy B. Hazelgrove* and *Ralph T. Catterall,* for the plaintiff in error.

*Allen G. Collins,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The parties will sometimes be referred to as they were related in the trial court, plaintiff and defendant.

The plaintiff, Pelouze, instituted suit by petition for attachment and judgment against the defendant, Hoffman Specialty Company, Incorporated, in the Law and Equity Court of the city of Richmond, Virginia, for the sum of $2,437.39, the balance claimed to be due him on account of unpaid salary.

The plaintiff was employed by the defendant as its Virginia and North Carolina representative, with headquarters in Richmond. The employment began on the 10th day of May, 1926, and continued until the 25th day of May, 1929, when it was terminated by the defendant. The fidelity of the plaintiff to his employer and his efficiency in his work were not questioned. His discharge was based upon the policy of the company to reduce its sales expense.

It will be observed that upon the date of the termination of the employment the plaintiff had worked for fifteen days on a new period of service—that is, his third year with the company expired on the 10th of May, 1929, and his resignation was requested on the 25th of May, 1929, to take effect immediately. The letter of the company to the plaintiff on this subject contains this statement: "In view of the foregoing, we are asking that you submit your resignation to take effect at once, with the understanding that your salary will be continued until June 30, 1929."

The plaintiff declined to tender his resignation and returned a check, sent him by the company, for $114.71, which bore this notation: "Acceptance of this check indicates a settlement in full of all claims against this company as per our letter June 20, 1929." The plaintiff, in returning the check, replied in part as follows: "I was originally employed by your company for one year beginning May 9, 1926, and my salary after May 9, 1927, became from year to year and therefore you could not properly discharge me

during a current year and I could not resign without your consent during the current year."

The issue then between the parties is whether the company had the right to discharge the plaintiff on May 25, 1929, or was it obligatory and binding upon it to continue him in its employ until May 10, 1930, the end of another year. The pivotal question is whether the contract of employment was for a year or a month.

It was proven that the plaintiff had earned $700.00 in other employment during the portion of the year following his discharge, which the jury deducted from the amount sued for and returned a verdict for the plaintiff for the residue, $1,737.29, which verdict the trial court refused to set aside. The motion of the defendant was based on its assertion that the verdict was contrary to the law and evidence; that the court had misdirected the jury as to the law; had refused instructions which should have been granted and had erred in not sustaining its motion to exclude the plaintiff's evidence.

In 28 R. C. L. 692, section 29, it is said: "The courts are not agreed as to the duration of a contract of hiring which specifies no term, but fixes compensation at a certain amount per day, week, month, or year. In some jurisdictions it is held that such a contract, in the absence of other circumstances controlling its duration, is an indefinite hiring only, terminable at the will of either party. * * * However, in a large number of cases where the term of employment was not provided for, it has been held that a hiring at a specified rate per year, month, or week imports a hiring for such full period. Thus an offer by telegraph 'If $1,000.00 a year is an inducement, come immediately. Answer,' and the answer 'Will accept $1,000.00 a year,' are communications which unexplained show a single contract for a year. And a contract of hiring was held to have been made for the term of a year, although the salary was

fixed at a certain rate per month, when a clause in the agreement provided for an increase of salary at the end of the first year if satisfaction was given."

In *Moss* v. *Decatur Land Improvement & Furnace Co.*, 93 Ala. 269, 9 So. 188, 30 Am. St. Rep. 55, it is said in the syllabus: "If one is employed to be paid by the month at a designated price, this constitutes an entire contract by the month, which the employer cannot terminate at will, and under which he is liable for a month's wages if he discharges his employee without cause before the expiration of the month."

In the opinion in the above case, *Beach* v. *Mullin*, 34 N. J. Law 344, is cited as follows: "A contract to pay $16.00 for a month's service is as entire in its consideration as is a contract to pay a sum for a chattel. If the payment of monthly or weekly wages is the only circumstance from which the duration of the contract is to be inferred, it will be taken to be a hiring for a month or a week."

In *Moss* v. *Decatur Land Improvement & Furnace Co.*, *supra*, the defendant discharged the plaintiff in the middle of the month under the claim that the hiring was by the day at the rate of so much per month. In the case in judgment the claim is that the hiring was by the month at the rate of so much per year, provided the plaintiff's version of the contract is the true one, which, however, the defendant does not concede.

In an annotation to the case of *Warden* v. *Hinds*, 90 C. C. A. 449, 163 Fed. 201, 25 L. R. A. (N. S.) 533, is the following: "In *Graves* v. *Lyon Bros. & Co.*, 110 Mich. 670, 68 N. W. 985, there had been an employment by the month extending over two years, and, at the beginning of the next year, the plaintiff was informed by his employers' agent that his 'pay would have to be reduced to $600.00 for the year.' An action to recover for his wrongful discharge before the end of the year resulted in the plaintiff's

favor, the court taking the view that it was a fair inference that the contract was for a year."

In the case of *Norton* v. *Cowell*, 65 Md. 359, 4 Atl. 408, 57 Am. Rep. 331, it is stated in the syllabus: "An offer of employment was made in a letter stating that the wages would 'be $100.00 per month', 'and if you give me satisfaction at the end of the first year, I will increase your salary accordingly.' *Held*, an offer for a year." In the body of the opinion it is said: "As will be observed, there is no express limitation in the letter as to the term of service, though the wages were to be at the rate of $100.00 per month. But stipulations for the payment of wages quarterly, monthly, or even weekly, are not inconsistent with a yearly hiring. *Fawcett* v. *Cash*, 5 B. & Ad. 908. For as said by Lord Kenyon, C. J., in the case of *The King* v. *Birdbrook*, 4 T. R. 245, 'whether the wages be to be paid by the week or the year can make no alteration in the duration of the service, if the contract were for a year.' "

█ Citation of cases, in which there were similar holdings, from the courts of last resort of many States, might be multiplied, but we do not deem it necessary. True it is that the authorities are not in agreement but we think that the sounder view is that, under the circumstances in the case in judgment, the hiring was for a year, and this conclusion is smartly strengthened when we consider the facts shown by the evidence.

The testimony of the plaintiff and that of the defendant's vice-president and general sales manager, C. V. Haynes, with whom the contract was directly made, is wholly at variance and irreconcilable. The plaintiff testified that his employment was for the period of one year at the salary of $2,400.00 a year and that it continued until March, 1927, the following year, when it was increased to $2,700.00 annually. The witness, Haynes, testified that the plaintiff's salary was $200.00 a month, that he did not tell him that

his salary would be $2,400.00 a year, and that his version of the matter was in accord with a cotemporaneous written memorandum; that all of their employees, except the officials, were employed by the month; and that the custom of the trade was to so employ their servants. The plaintiff and the witness, Haynes, representing the defendant, met by appointment at the Willard Hotel in Washington where and when the original contract was made. Defendant's counsel take the position that the plaintiff's testimony, as to the words constituting the contract and his reasons for remembering them, is incredible. We are not in accord with this. We apprehend that to subject the spoken words of a layman, on any subject, to the crucible of philosophical analysis would as often lead one away from the truth of what was intended as to it.

Other portions of the evidence, we think, corroborate the version of the plaintiff and tend to establish the accuracy of his statements. For instance, Mr. Haynes testified that the custom of the defendant and like concerns was to engage their employees by the month and another witness, Mr. G. W. Barr, a former assistant general sales manager of the defendant, was offered as a witness for the defendant and asked by its counsel what was the time limit of employment among companies of the defendant's kind, and what was the usual length of employment, and his reply was that a man is employed at so much a year, but it is always on a monthly basis, and that *he* worked on a monthly basis. As to what he meant by a monthly basis is not explained, but certain it is that he said that a man is employed at so much a year, which is so far an unequivocal statement and accords with the plaintiff's version rather than the defendant's.

On April 5, 1927, the defendant wrote the plaintiff the following letter: "You were scheduled to receive an increase to $2,700.00 annually starting March 1st this year.

Through an oversight Waterbury was not advised. However, we have today notified them to increase your salary in accordance with the above and same will go into effect on the date mentioned.

"The writer would like to take this opportunity of expressing to you our appreciation of your loyalty to our company during the period of time you have been with us."

This letter was signed by Mr. C. V. Haynes, referred to above. If this is simply a continuation of the original contract at a different rate, it seems a confirmation of the plaintiff's contention. If its effect was to make a new contract then there can be no doubt of its legal import.

■ What is the significance of the expression "$2,700.00 annually starting March 1st this year?" " 'Annually' means year by year." Amer. & Eng. Ency. of Law, (2d ed.) volume 2, page 385. "The word *annually* means every year." *Union Iron Co.* v. *Pierce*, 4 Biss. (U. S.) 330, Fed. Cas. No. 14,367.

"The ordinary and natural meaning of a direction by one person to pay to another a specified sum *annually*, or each year, is that the specified sum is to be paid in an annual or yearly payment. The word or phrase naturally interpreted would be regarded as fixing both the measure and time of payment." *Kearney* v. *Cruikshank*, 117 N. Y. 99, 22 N. E. 580, 582.

Note that the defendant's letter spoke of the plaintiff's pay as "your salary." This expression has received judicial interpretation which is elucidative and pertinent. *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 85 N. E. 877, 879, after citing cases on both sides of the question we have been discussing, says: "Without reviewing the cases or analyzing the principles to determine which is the sounder view, it is enough to say that the use of the sum of money equivalent to a year's pay in describing the amount the plaintiff was to receive was proper for con-

sideration in connection with other incidents." The annotator says it was pointed out in this case that the word "salary" is more frequently applied to annual employment than to any other, and its use may import a factor of permanency.

But perhaps of as much significance as anything we have yet observed, is the interpretation which the parties themselves placed upon the matter, which we glean from their conduct shown by the evidence. If the contention of the defendant is sound, it undoubtedly had the right to terminate the contract at any time without more ado. But it did not do it. It requested the plaintiff, by letter, to submit his resignation, and threw out to him the gratuity of more than a month's salary as an inducement. This does not import overmuch confidence in its contention that the contract was of indefinite duration and so terminable at will or that its duration was no longer than a month and terminable with almost as much celerity.

We do not controvert the settled doctrine in this State, that where no specific time is fixed determining the duration of the employment, it is presumed to be an employment at will, terminable at any time by either party, and this is so even when the consideration is to be paid at specific intervals; but this presumption, of course, is rebuttable.

We think the case is with the plaintiff, that the original contract, in the light of the evidence, contemplated a year's hiring at $2,400.00 a year, payable at $200.00 per month; that it was subsequently increased to $2,700.00, and ran on from year to year.

Elliott on Contracts, volume 2, page 860, section 1566: "When the contract is oral the terms of the agreement are a matter of fact, and if those terms be obscure, or equivocal, or are susceptible of explanation from extrinsic evidence, it is for the jury to find the meaning of the terms employed

but the effect of a parol agreement, when its terms are given and its meaning fixed, is as much a question of law as the construction of a written agreement. Exceptional cases arise when the contract rests partly in correspondence and partly in oral communications, in which it is held that the question whether or not there is a contract is a question for the jury.

However far apart the authorities may be as to what constitutes a hiring for a definite period and what constitutes a hiring at will, terminable at any time, in the absence of precise and definite terms controlling the meaning of the contract, there is unanimity of agreement that where the evidence is conflicting the question is one for determination by the jury.

The following quotation from the case of *Tatterson* v. *Suffolk Mfg. Co.*, 106 Mass. 56, was cited with approval by this court in the case of *Conrad* v. *Ellison-Harvey Co.*, 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918B, 1171, and the case of *Buchanan & Son* v. *Ewell*, 148 Va. 762, 139 S. E. 483: "There was no express stipulation, either written or oral, which fixed the time for the continuance of the employment of the plaintiff by the defendant. That element of their contract depended upon the understanding and intent of the parties, which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact to be drawn only by the jury. The whole question, what was the contract existing between the parties at the time the defendants undertook to terminate the employment, was properly submitted to the jury."

The terms of the letter of the defendant increasing the plaintiff's salary and those of the subsequent letter requesting the submission of his resignation, with the other evidence, made the issue one for the jury.

We do not think there was error in the granting of instruction No. 4. There was sufficient evidence upon which to predicate it. As to instruction No. 2, we think it was correctly refused as drawn and offered. The effect of the original contract might have been materially changed by subsequent conditions or events, in which view, its establishment by proof would not have been essential to the plaintiff's recovery. In other words, if the jury had believed that the letter referred to, viewed in the light of other circumstances obtaining, constituted a changed contract, if not a new one, then it was only incumbent upon the plaintiff to prove the contract in existence at the time of the breach. Of course the defendant was entitled to an instruction on the burden of proof, but it was obligatory upon it to propose one which was free from valid objection.

We sustain the judgment of the trial court.

*Affirmed.*