# Wytheville

EDWARDS COMPANY, INCORPORATED V. ROBERT D. DEIHL.

June 15, 1933.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*C. S. Towles* and *R. O. Norris, Jr.,* for the plaintiff in error.

*Raymond Sisson,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In this case Robert D. Deihl, master of a fishing steamer, has recovered a judgment against Edwards Company, Incorporated, in damages for breach of contract.

Menhaden is a fish not fit for food but valuable for its oil and for certain by-products, and is caught in vast quantities along the Atlantic littoral and in contiguous bays. Reedsville, in Northumberland county, is the major base of this industry. There are located eight factories which process this catch; all of them operate sea-going fishing steamers. Once prosperous, they in recent years, for sundry reasons, have become doubtful ventures. By statute the fishing season is from the third Tuesday in June to December 1st.

Captain Deihl was a master of twelve or thirteen years' experience and out of a job. On December 9, 1930, he wrote to the defendant company asking to be appointed captain of its steamer "Messick." That company in reply invited him to call. This he did in December. W. A. Edwards, who was president and general manager of the company, went over the situation with him. Nothing was done. He called again. On both of these occasions Edwards said that he was not sure that his company would operate at all in the coming year, and that if his factory did open up there was no certainty about how long it would continue to operate. On this basis Deihl was hired. He said: "I was willing and did take the risk of whether or not he would start fishing and the risk of how long he would fish after starting." The outlook was anything but promising, but both Deihl

and the company were willing to take chances and knew at the time that they were taking chances. Naturally nothing was said about duration of employment. It rested upon conditions as they might develop. Final terms appear in this letter of March 17, 1931:

"CAPTAIN ROBERT DEIHL,

"Tibitha, Va.

"DEAR SIR:

"If conditions are such that we can go fishing at or near the beginning of the season the following will be the scale of wages you will use in hiring men:

"7 men at $30.00 per month and 1½ cents per M.

"15 men at $25.00 per month and 1½ cents per M.

"Mate $50.00 per month and 6 cents per M.

"Pilot $90.00 per month and 3 cents per M.

"Cook $45.00 per month and 2 cents per M.

"Drive boat $45.00 per month and 2 cents per M.

"Chief engineer $90.00 per month and 2 cents per M.

"Asst. engineer $70.00 per month and 2 cents per M.

"Captain 20 cents per M.

"3 firemen $30.00 per month and 1½ cents per M.

"At the above scale the men are to board themselves, but we will sell all provisions at cost plus a reasonable handling charge. There is no certainty that we can even fish at the above scale of wages under existing conditions, but if things improve we want to fish and will try our best, but there is no obligation on our part that we will fish the Str. W. L. Mesick.

"We trust we will have your co-operation."

The captain employed the mate, pilot and crew; the company the engineers and firemen. All of them were paid by the company upon the basis of the letter of March 17th. Fishing began on July 7th, and continued until July 24th, when the ship tied up at Norfolk, at which time 364,000 fish had been caught. By then the company's steamer "Lennen" had caught 599,000 fish. The steamer "Edwards" caught 705,000 fish, and the steamer "E. Warren Edwards"

caught 288,000 fish. On Friday, July 24th, most of the crew notified the company that they were going to leave, since they were not earning enough to live on. At the request of the company and for additional promised compensation, they agreed to fish for another day. This they did and caught nothing. The next day the company notified Deihl that his employment was terminated. He on his part declined to accept this discharge, upon the ground that he had been hired for the season and was entitled to be paid on that basis. The company offered to let him and Captain Williams continue to operate the steamer "E. Warren Edwards" on the same base pay as that which he had theretofore received, they to divide their earnings between them. This Deihl refused.

The company afterwards secured another crew and captain, and operated the "Messick" until the end of the season.

We have seen that Deihl was employed for no definite time, and that there was no certainty that the company could fish even at the wage scale offered, and that "there is no obligation on our part that we will fish the steamer W. L. Messick." It may be readily conceded that Deihl's poor catch was fisherman's luck, yet the fact remains that it was so poor that his crew left him. Certainly, for this the company was in no wise responsible.

A simple contract for hire is a contract at will and may be broken at election. *Title Ins. Co.* v. *Howell,* 158 Va. 713, 164 S. E. 387; *Hoffman Specialty Co.* v. *Pelouze,* 158 Va. 586, 164 S. E. 397; *Conrad* v. *Ellison-Harvey Co.,* 120 Va. 458, 91 S. E. 763, 766, Ann. Cas. 1918B, 1171; *Coppage* v. *Kansas,* 236 U. S. 1, 35 S. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960; *Resener* v. *Watts, Ritter & Co.,* 73 W. Va. 342, 80 S. E. 839, 52 L. R. A. (N. S.) 629; Labatt on Master & Serv., section 159; Lile's Notes on 1 Min. Inst., page 54; Williston on Contracts, section 39. This rule is not inflexible, but the burden is on him who challenges it to show that it does not apply. *Resener* v. *Watts, Ritter & Co., supra.* Circumstances themselves sometimes give us a

conclusive answer. Admiral Byrd could not have discharged one of his sailors when on the Antarctic continent. Often no express contract is necessary.

" 'There was no express stipulation, either written or oral, which fixed the time for the continuance of the employment of the plaintiff by the defendant. That element of their contract depended upon the understanding and intent of the parties; which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact, to be drawn only by the jury. The whole question, What was the contract existing between the parties, at the time the defendants undertook to terminate the employment?, was properly submitted to the jury.' " *Tatterson* v. *Suffolk Mfg. Co.*, 106 Mass. 56, cited with approval in *Conrad* v. *Ellison-Harvey Co.*, *supra*.

There is nothing obscure about the contract in judgment. Its setting shows that it was one of hazard. By no fair inference can it be said that the company intended to operate for any definite time, or to tie up a steamer and continue to pay the captain after a crew, which he himself hired, had deserted. Here, with the crew gone, the company had to make the best of a bad job. It got another captain who with his crew undertook to fish, and did fish, the steamer on the same terms under which Captain Deihl failed. The most that we can say is that he was unfortunate, but for that the company was not responsible.

The judgment complained of must be reversed and final judgment entered for the defendant.

*Reversed.*