6

James Tedder

    v.

Mr. Dunderbak, Inc.

May 12, 1980

Case No. 78-L-310

By JUDGE E. BALLARD BAKER

In an Amended Motion for Judgment, the plaintiff claims he was "permanently employed by the defendant", at a starting salary of $300.00 per week, and was discharged a few months later without justification. The plaintiff, James Tedder, contends the employment was of a permanent nature, subject only to proper performance of his duties.

A jury awarded the plaintiff $15,000.00 in trial on January 24, 1980, and the defendant moved to set the verdict aside as contrary to the law and evidence and as being excessive. Instruction No. 1 given on the liability issue required Tedder to prove by a preponderance of the evidence that:

> under his contract of employment. . . he could not be discharged without just cause. Where no specific time is fixed for the duration of a contract of employment, there is a rebuttable presumption that it is a contract at will, terminable at any time by either party without cause.

While I recognize that the general rule in Virginia is as stated in *Griffith* v. *Electrolux*, 454 F.Supp. 29 (1978), that a contract for personal services which does not specify any time of duration of employment is terminable at will and without cause, the cases cited in support of that rule, and the cases cited in *Plaskitt* v. *Black Diamond Trailer*, 209 Va. 460 (1968), differ in facts from the present case.

Tedder says this case is like *Norfolk Southern* v. *Harris*, 190 Va. 966 (1950), where the plaintiff had a written contract that he would not be dismissed without just cause. Tedder also relies on *Hoffman Company* v. *Pelouze*, 158 Va. 586 (1932), where the Court held the employee had a contract for one year and could not be terminated without cause during that year.

There is an annotation at 60 ALR 3d 226 on "Validity and Duration of Contract Purporting to be for Permanent Employment", and the following comments from that annotation appear pertinent:

> Because the term "permanent employment" has been construed as meaning steady employment, as opposed to temporary employment, rather than employment for life or some other term purporting "eternal employment", that term, standing alone, conveys no indication of duration, and as such the employment will be considered terminable at will unless some contrary indication is gleaned from the intent of the parties. (60 ALR 3d 232-233).
>
> [F]or reasons of lack of mutuality and indefiniteness, it is usually held that contracts for permanent or lifetime employment, when unsupported by consideration additional to services are indefinite in nature and terminable at the will of either party. . . [M]any courts take the position that a contract of employment purporting to be permanent in nature or for life is valid and enforceable when it is supported by consideration additional to services. (60 ALR 3d 233).
>
> In order for additional consideration to be sufficient to support the promise of permanent or lifetime employment, it would appear that there must be a detriment absorbed

by the employee which results in a corresponding benefit to the employer. (60 ALR 3d 234).

I gather the following from the above:

1. Lack of mutuality and indefiniteness are basic reasons why contracts of so-called permanent employment are terminable at will without cause.

2. If some contrary indication appears from the intent of the parties, that intent should be recognized.

3. If the employee furnishes additional consideration, or if there are additional stipulations with respect to duration, then the contract is not terminable at will. Such additional consideration must be something of benefit to the employer.

In *Norfolk Southern, supra*, the Court held that where the contract provides that it shall continue until the employee gives the employer just cause to end it, then the contract is of a fixed duration, and the doctrine of mutuality is inapplicable. 190 Va. 976. In *Norfolk Southern* the "without a just cause" provision was a part of the written contract. It provided a duration.

A question under Instruction No. 1 was whether the jury could find that Tedder and Mr. Dunderbak agreed he could not be fired without just cause. If so, such agreement fixes a duration.

Looking at the evidence in this case, Tedder, prior to being employed, expressed to defendant "that I was looking for a career. I was not looking for a parttime job or a temporary job." (Tr. p. 25). Notes in the defendant's personnel file relating to Tedder state certain promises made to him, including "Salary of $15,600.00 per year." (Tr. p. 152). The letter of January 9, 1978, which confirms a telephone call hiring Tedder, was before the jury as Exh. 1 and spoke of a salary of $300.00 per week among other benefits. After the employment began, there was considerable conversation relating to the sale of Tedder's home in Maryland, the purchase of a home in the Richmond area, and possible assignment of Tedder to Las Vegas. Such conversation cannot vary the terms of the employment contract already entered into, but can be considered as evidence of the parties' understanding of the nature of the employment contract.

The jury was instructed that Tedder had to prove that under his contract he could not be discharged without

just cause. This, I believe, is a correct statement of the law. *Edwards* v. *Deihl*, 160 Va. 587 at 590-591 (1933).

When all the circumstances relating to the employment of Tedder are considered, in my view the jury could find that the understanding was that just cause was required before Tedder could be fired.

As I read *Hoffman* v. *Pelouze, supra,* it also appears that the jury perhaps could have found that the hiring was for a period of one year. However, no instruction on that point was given, leaving the jury free to find that Tedder had a contract, subject to being terminated only on just cause, rather than possible finding Tedder had a one year contract and could be discharged during that year only on just cause. This point will be discussed later in this letter.

The defendant contends the jury verdict of $15,000.00 is excessive.

Tedder testified that, after his discharge in June 1978, he earned a gross of $5,095.00 and a net of $4,000.00. (Tr. p. 72). In 1979, he says he earned a gross of $8,200.00, with a net of $6,000.00 through July 1979, was unemployed from August 1 through October 28, and went to work on October 29 at $6.14 an hour. (Tr. p. 44). At one point, he stated he grossed $13,000.00 between June 26, 1978 and August 1, 1979 (Tr. p. 42, 43, 72). The defendant objected to testimony relating to wage loss a year after discharge. (Tr. p. 42).

In his memorandum, the plaintiff computes the wage loss, assuming Tedder had received a salary increase he says defendant had promised, at $14,040.00 through 1979.

There was considerable evidence presented in this case relating to the sale of Tedder's home in Maryland, his purchase of a home in the Richmond area, and concerns Tedder felt about the possibility of being assigned to Las Vegas when he was about to close on the Richmond house. (Tr. p. 30-36). This came in, over objection, and I believe is admissible to support Tedder's position that he had a job he would hold so long as he performed, but is not proper on damages.

While Instruction 5 did tell the jury to measure damages by loss of wages, the jury was not otherwise told to disregard testimony relating to the houses on the damages aspect.

In view of the evidence, I think the verdict is excessive. I believe it to be out of proportion to the loss sustained. I do not think the defendant is responsible for the lack of employment Tedder sustained between August 1, 1979, and October 31, 1979, some 14 to 17 months after he left Mr. Dunderbak. I am also concerned that the jury was not properly told to disregard the house testimony in determining damages.

Under section 8.01-383.1 where a verdict is excessive a trial court may require a plaintiff to remit a part of his recovery or submit to a new trial. The plaintiff may accept the reduced sum, may seek an appeal to the reduction or may submit to a new trial. *Campbell v. Hankins*, 217 Va. 800 (1977).

I believe remittitur is appropriate here as to the excessive verdict.

The difficult thing is to fix the amount. Considering all the factors involved, I would order a remittitur of $5,700.00, thus reducing the award to $9,300.00. This amount, $9,300.00, is in the area of the earnings the jury could find Tedder lost between his discharge by the defendant and August 1, 1979, the date he again became unemployed.

The figure considers the net he received during that period as against what Mr. Dunderbak would have paid, and allows a little bit for an increase he says was promised.

A remittitur to $9,300.00 is more than Tedder would receive if a jury should decide he only had a one-year contract, but a jury might not make that determination.

The plaintiff may accept the remittitur unconditionally, or conditionally and appeal or ask for a new trial. As the jury has determined that Tedder's contract required just cause before he could be terminated and as the jury has also found there was no just cause, those issues would not be tried again. A new trial would be on damages and might also allow the jury to decide if the contract was for one year, subject to discharge for cause during that period.