## CIRCUIT COURT OF THE CITY OF RICHMOND

Joseph R. Byer

    v.

Virginia Electric and Power Co.

Case No. LL-1155-W

Charles D. Kincaid

    v.

Virginia Electric and Power Co.

Case No. LL-1192-W

James W. Powell, Jr.

    v.

Virginia Electric and Power Co.

Case No. LL-1195-W

February 11, 1988

By JUDGE RANDALL G. JOHNSON

These three cases are before the court on defendant's demurrer to each motion for judgment. While the cases have not been consolidated for trial, the legal and factual

issues are, so far as they are relevant to defendant's demurrers, identical. The demurrers were briefed and argued together, and the court will rule on them together.

The motions for judgment allege that each plaintiff was hired by defendant on October 1, 1981, as a physical security officer at defendant's North Anna power station. Each was employed as a guard at the construction site of the North Anna plant, in an area called "Unit 3," and was told that he would remain in that position until the completion of Unit 3, in approximately ten years. Approximately 1½ years after plaintiffs were hired, each learned that the Unit 3 project had been cancelled. Each plaintiff was retained by defendant, however, and each attended the Nuclear Security School at North Anna. Thereafter, plaintiffs Byer and Kincaid transferred to the nuclear security department at defendant's Surry plant where they were employed as nuclear security officers; plaintiff Powell remained at North Anna, also as a nuclear security officer. They remained in these latter jobs for the remainder of their employment.

On or about October 9, 1986, each plaintiff was called into the security office at his location and questioned about his possible use of marijuana at a private party in Louisa, Virginia, in or about October, 1981. Each plaintiff admitted that he had used marijuana at the party, which was a private party away from the premises of defendant, and which was held during the off-duty hours of each plaintiff. None of the plaintiffs had ever been cited for misconduct in regard to this incident, and there is no indication that defendant knew about the incident prior to October, 1986. At all times prior to October, 1986, each plaintiff had been an exemplary and exceptional employee, and had consistently received good evaluations. On or about October 10, 1986, however, Byer and Kincaid were fired. On or about October 13, 1986, Powell was fired. Each plaintiff subsequently filed a grievance concerning his termination in accordance with defendant's internal administrative procedures. Each such grievance was denied by memorandum dated November 12, 1986, which contained the following statement:

The Company's policy is that illegal use of drugs, on or off duty, by security personnel

or supervisors impairs their ability to enforce Company policies. Therefore, any illegal involvement by these employees will result in termination. Exhibit B to Motions for Judgment.

Plaintiffs allege that defendant's act of terminating their employment constitutes a breach of their employment contracts. Specifically, plaintiffs allege the following:

1. That each plaintiff entered into an employment contract with defendant which was not terminable at will, but rather was terminable only for good and just cause, including prior warning and reprimand prior to discharge;

2. That defendant's policy and procedure, contained in the Employee Policy Manual, requires a series of progressive penalties, including a series of warnings, reprimands, and suspensions, before termination;

3. That defendant, through its agents, servants, and employees, expressly and impliedly represented to each plaintiff that his employment was permanent in nature and could only be terminated for good cause;

4. That at the time plaintiffs used marijuana in October, 1981, defendant's Employee Policy Manual did not contain the language set out in the memoranda dated November 12, 1986, which denied plaintiffs' grievances. Instead, the Employee Policy Manual then in effect stated:

Every employee should clearly understand that a co-worker under the influence of intoxicants, self-administered drugs, or narcotics poses a threat to their personal safety which may result in serious injury or death. The use of intoxicants while on the job is prohibited and can result in suspension or termination. The illegal use, possession of or sale of narcotics, hallucinogens, depressants, stimulants or marijuana on Company business or Company property can result in suspension or termination. The use of narcotics, hallucinogens, depressants, stimulants or marijuana off Company premises which affects an employee's ability to perform his/her job, or which generates publicity or circumstances which adversely affect the Company or its employees, can result in discipline, including possible

suspension or termination. Exhibit A to Motions for Judgment.

The Manual was not amended to include the language contained in the November 12, 1986, memoranda until July 15, 1986; and

5. That defendant has never contended that plaintiffs' use of marijuana in October, 1981, affected any plaintiff's job performance, or that such use generated adverse publicity.

Each plaintiff seeks damages in the sum of $875,000.

Defendant's demurrer to each motion for judgment is based on four grounds. First, defendant argues that plaintiffs do not state a cause of action because their employment contracts were terminable at will. Second, defendant states that no causes of action are stated because plaintiffs have not alleged facts establishing the formation of a contract or a breach thereof. Third, defendant states that the claims should be dismissed since plaintiffs admit they smoked marijuana while employed by defendant and that such conduct provides just cause for discharge under defendant's policies. Finally, defendant argues that plaintiffs' claims are barred by the statute of frauds. The court views the first two grounds of the demurrers as being closely related, if not identical. Accordingly, they will be considered together. The other two grounds will each be considered separately. For the reasons which follow, defendant's demurrers will be overruled.

1. *Nature of Plaintiff's Employment*

In support of its contention that plaintiffs have failed to allege facts sufficient to establish employment contracts, defendant relies primarily upon the case of *Miller v. SEVAMP, Inc.*, 234 Va. 462, 4 V.L.R. 1309 (1987). In *SEVAMP*, the Court restated and reaffirmed the law of Virginia that "where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will." 4 V.L.R. at 1312. *See also Norfolk Southern Ry. Co. v. Harris*, 190 Va. 966, 976, 59 S.E.2d 110 (1950); *Hoffman Company v. Pelouze*, 158 Va. 586, 594, 164 S.E. 397 (1932); *Title*

*Ins. Co. v. Howell*, 158 Va. 713, 717-18, 164 S.E. 387 (1932).[1] In addition, the Court stated:

> An employee is ordinarily at liberty to leave his employment for any reason or for no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer. 4 V.L.R. at 1311. *See also Town of Vinton v. City of Roanoke*, 195 Va. 881, 896, 80 S.E.2d 608 (1954).

As the Court in *SEVAMP* states, however, the employment-at-will doctrine is not absolute. In *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 297 S.E.2d 647 (1982) (promise of promotion to better job if employee resigned present job), and *Twohy v. Harris*, 194 Va. 69, 72 S.E.2d 329 (1952) (promise of bonus measured by value of stock if employee remained on the job), the Court "found employment contracts to be supported by additional consideration sufficient to take the contracts out of the category of an employment at will." *SEVAMP*, *supra*, at 1313. And in *Norfolk Southern Ry. Co. v. Harris*, *supra*, a case in which the plaintiff-employee's contract provided that employees "will not be disciplined or dismissed from the service without a just cause,"[2] the Court stated:

> It is settled doctrine in this State that where no specific time is fixed for the duration of an employment, there is a rebuttable presumption that it is an employment at will, terminable at any time by either party. . . .

---

[1] While the motions for judgment allege that plaintiffs were initially promised employment until the completion of Unit 3, in approximately ten years, it became clear after 1-1/2 years of employment that the Unit 3 project had been cancelled. Thus, there could no longer be any reliance upon any express or implied contract of employment related to the Unit 3 project.

[2] 190 Va. at 969.

Here, however, a definite time was fixed for the duration of the employment. It was, by the terms of the contract, to continue until the plaintiff gave to the defendant just cause to end it. The result of being discharged after long years of service in a particular occupation can well be serious. The defendant's agreement that it would not discharge plaintiff without just cause was a thing of value to him, a safeguard against the loss and embarrassment to be expected from an arbitrary discharge. The defendant's agreement that it would not be done was a term of plaintiff's employment, compensation for his work which he had earned along with his wages. The defendant ought not to take that promised reward from him without incurring a penalty for violating its agreement. It was a promise in return for services which the plaintiff performed and which furnished sufficient consideration for a binding contract. In such case the doctrine of mutuality is inapplicable. 190 Va. at 976 (citations omitted).

The court believes that the above-quoted language is controlling here. Just as the plaintiff in *Norfolk Southern* was promised he would be fired only for "a just cause," each plaintiff here has alleged that his contract with defendant "was terminable only for good and just cause." Paragraph 18 of Byer's Motion for Judgment; Paragraph 17 of Kincaid's Motion for Judgment; Paragraph 19 of Powell's Motion for Judgment. In addition, each motion for judgment also alleges that defendant, "through its agents, servants and employees, expressly and impliedly represented to plaintiff that his employment with defendant was permanent in nature and could only be terminated by defendant if plaintiff gave defendant good cause to terminate such contract of employment." Paragraph 20 of Byer's Motion for Judgment; Paragraph 19 of Kincaid's Motion for Judgment, Paragraph 21 of Powell's Motion for Judgment. These allegations place these cases squarely within the holding of *Norfolk Southern*.

While defendant seeks to distinguish the facts alleged here by pointing out that the employment contract in

*Norfolk Southern* was written, there is nothing in *Norfolk Southern* which suggests that the holding is limited to written contracts.[3] Moreover, a fair reading of the motions for judgment in these cases makes it clear that plaintiffs also allege that the written Employee Policy Manual, containing work rules and policies promulgated by defendant, constitutes a contract of employment. In *Frazier v. Colonial Williamsburg Foundation*, 574 F. Supp. 318 (E.D. Va. 1983), the court, in applying Virginia law, stated:

> [T]his court may ask the jury to consider whether the employer, speaking through the employee manual, made a specific promise not to discharge employees except for good cause. In sum, the question of whether the employee manual, while not creating an employment contract as such, may have constituted a binding promise, remains an issue of fact for the jury to decide. 574 F. Supp. at 321.

In addition, in *Garcia v. Aetna Finance Co.*, 752 F.2d 488 (10th Cir. 1984), cited by defendant for the proposition that an employee manual is merely a unilateral expression of policy, the court stated:

> We recognize that . . . an employer's distribution to employees of handbooks or policy manuals which contain specific procedures for termination of employment, when relied upon by an employee and supported by the consideration of continued service, may result in the employer being contractually bound to comply with those procedures. 752 F.2d at 491 n. 3.

And in *Miller v. SEVAMP, Inc.*, *supra*, the Court cited language in the employer's "Personnel and Administrative Procedures" manual that an "employee may be dismissed at the discretion of the Executive Director" to show that at-will employment *was* created. 4 V.L.R. at 1314-15. By necessary implication, an employment manual which states

---

[3] But see infra, concerning the statute of frauds.

that an employee may only be terminated for cause must establish something else. Since plaintiffs here specifically allege that their terminations were in "direct violation of practices and policies set forth in Defendant's Employee Policy Manual," a factual issue, not addressable by demurrer, is presented.[4]

Finally, defendant's assertion that no contracts of employment could exist because there was no mutuality of obligation is specifically answered by *Norfolk Southern Ry. Co. v. Harris, supra,* in which the Court held that where an employer promises to terminate an employee only for "just cause," such promise is "in return for services which the [employee] performed and which furnished sufficient consideration for a binding contract. In such case the doctrine of mutuality is inapplicable." 190 Va. at 969. For the foregoing reasons, the first two grounds of defendant's demurrer are not persuasive.

## 2. *Plaintiff's Admission of Marijuana Use*

As previously stated, defendant's policy on drug use which was in effect in October, 1981, stated that "[t]he alleged use, possession of or sale of . . . marijuana on Company business or Company property can result in suspension or termination." *See* p. 3 *supra.* With regard to marijuana use *away* from defendant's premises, the 1981 policy stated that such use "can result in discipline, including possible suspension or termination," only if such use "affects an employee's ability to perform his/her job, or . . . generates publicity or circumstances which adversely affect the Company or its employees." *Id.* It was not until July 15, 1986, that the Employee Policy Manual was changed to provide that "any illegal involvement" with marijuana or other drugs will result in termination. Thus, if plaintiffs' employment contracts were contracts under which they could only be terminated for just cause, and if just cause in 1981 in connection with marijuana use was defined only by defendant's drug policy as set

---

[4] See SEVAMP, *supra:* Where the evidence concerning the terms of a contract of employment is in conflict, the question whether the employment is at will or for a definite term becomes one of fact for resolution by a jury. 4 V.L.R. at 1312.

out in the Employee Policy Manual, it cannot be said that plaintiffs' admissions of marijuana use off company premises in October, 1981, based solely on the allegations of the motions for judgment, constitute just cause for their terminations. At this stage of the proceedings, plaintiffs' allegations in this regard survive defendant's demurrer.

### 3. *Statute of Frauds*

The final ground of defendant's demurrer is that plaintiff's claim is barred by the statute of frauds. Va. Code § 11-2. So far as is pertinent here, the statute of frauds provides:

> No action shall be brought . . . [u]pon any agreement that is not to be performed within a year . . . [u]nless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent . . . .

The statute may not be raised by demurrer, however, where it cannot be determined from plaintiff's initial pleading whether the contract sued on was an oral or written one. As stated in *Michie's Jurisprudence of Virginia and West Virginia*:

> If the declaration sets out a verbal contract, which the statute requires to be in writing, and bases the right to recover upon the breach of that contract, the defense of the statute may properly be raised by demurrer . . . . However, unless it appears from a bill that the contract sued upon is oral, the defense of the statute of frauds is not presented by a demurrer. 8B M.J. *False Imprisonment*, § 1 (*citing Matthews v. Hilesman*, 11 Va. L. Reg. 46 (1905); and *Kennedy v. Burns*, 84 W. Va. 701, 101 S.E. 156 (1919)).

The reason for the above rule is clear. Since a demurrer "lies only for a matter already apparent on

the face of the pleadings, or which is made so to appear by *oyer*,"[5] a demurrer which is based upon the statute of frauds can only be presented where it is clear from plaintiff's initial pleading that an oral contract is alleged. While defendant asserts in its memorandum in support of its demurrer that any promises to or agreements with plaintiffs were oral, such fact is not "apparent on the face of" the motions for judgment. To the contrary, the motions for judgment simply allege that "Plaintiff and Defendant entered into an employment contract which was not terminable 'at will . . . '." Paragraph 18 of the Byer Motion for Judgment.[6] The motions for judgment do not state whether such contracts were oral or written. Because the pleadings which are the subject of the demurrer contain no allegation of an oral contract, nor any allegations from which it must be concluded that an oral contract is involved, the demurrer may not be based on the statute of frauds. Accordingly, the demurrer will not be sustained.

[5] County School Board v. Snead, 198 Va. 100, 103, 92 S.E.2d 497 (1956).

[6] Each of the other motions for judgment contains an identical paragraph, though differently numbered. While the motions for judgment also allege that defendant's written Employee Policy Manual is a contract (see supra), there is no allegation that the Manual was signed by defendant, a necessary ingredient under the statute of frauds.