## CIRCUIT COURT OF THE CITY OF RICHMOND

Warren Spiller

v.

James River Corp.

December 23, 1993

Case No. LW-2216–3

BY JUDGE T. J. MARKOW

This case is before the court on demurrer and defendant's Motion Craving Oyer.

Plaintiff, Warren Spiller, brought this action against his former employer, James River Corporation, claiming that James River breached his employment contract by discharging him from his position as James River's Corporate Controller without cause. The Motion for Judgment contains claims for relief based on breach of employment contract (Count I), breach of a covenant of good faith and fair dealing (Count II), and promissory estoppel (Count III). During argument, Spiller's counsel advised the court that Spiller's claim for mental and emotional distress was being withdrawn.

James River hired Spiller in 1977 as a full-time salaried employee. Spiller later became James River's Corporate Controller, the position he held when James River terminated his employment in November, 1992. Spiller claims he had an employment agreement with James River which provided that he could only be terminated for cause and that James River would treat him with the "[h]ighest standards of integrity, ethics, and fairness." Spiller makes no claim of any formal

written contract between the parties. He claims, however, that statements in four documents issued by James River and distributed to Spiller during his employment comprise an employment contract which limited James River's right to terminate his employment for cause only. Defendant craves oyer of all four documents, plus one other similar document, all of which are necessary for full review of plaintiff's claims and all of which the court considers.

The first document Spiller relies on is entitled, "James River Corporation: Strategy Statement," which was distributed by James River in 1984 ("1984 Strategy Statement"). The document discusses James River's corporate and financial goals, fundamental values and beliefs, and general business plans. To support his claim, Spiller singles out two statements contained in the section entitled "Fundamental Values/ Beliefs": first, the statement under the heading of "Jobs First" that: "The Corporation can make the most effective social contribution by creating and maintaining secure, safe and productive jobs," secondly, the statement under the heading "Ethics": "Highest standards of integrity, ethics, and fairness must override in all transactions and relationships."

The second document upon which Spiller relies was issued by James River in 1988, and is entitled "Corporate Vision Values & Beliefs and Strategy — Interpretive Papers" ("1988 Strategy Statement"). Like its predecessor, this document discusses James River's corporate and financial goals, and fundamental values and beliefs. Spiller relies on the following statement contained under the caption "Desired State of Employee Relations": "Termination is only for clearly defined cause and, except where clearly inappropriate, only after all other remedial measures have been taken. Termination is subject to an internal review process."

The third document upon which Spiller relies was issued by James River in January, 1990, and is entitled "James River Corporation: Vision Values & Strategy Statement" ("1990 Strategy Statement"). The document discusses the same subjects as the preceding Strategy Statements. Spiller relies upon two statements: first, a statement contained under the caption "Ethics": "James River is committed to fair treatment for all employees," secondly, a statement that "These beliefs underlie the following Employee Relations goals: Employees feel secure in their jobs and recognize that the key to long-term job security is on-going business competitiveness."

The fourth document Spiller relies on is a handbook entitled "James River Corporation: Benefits and Policies for Salaried Employees" ("Benefits Book"), which James River issued to employees in January, 1991. The Benefits Book contains information of various James River employee benefits, such as health care, insurance, retirement, profit sharing and stock purchase plans. The portion of the document that Spiller relies upon involves a discussion of James River's salary continuation benefits provided to non-union salaried employees who are terminated from employment or placed in "inactive" status. Spiller asserts that the Benefits Book addresses severance benefits payable to a terminated employee in the context of only three circumstances: termination for misconduct, inability to perform, and job elimination. Spiller argues that because the Benefits Book addresses termination resulting from these three circumstances, they constitute the only grounds upon which a salaried James River employee may be terminated involuntarily.

James River demurs on the grounds that Spiller was an employee at will and that the documents that Spiller contends constitute his employment contract neither contain binding promises nor meet the contractual requirements for an offer. In support of its demurrer, James River craves oyer of all documents Spiller relies upon in support of the Motion for Judgment. In addition, James River craves oyer of a fifth document entitled "James River Corporation: Values, Beliefs & Strategy," which document James River issued to its employees, including Spiller, during the term of his employment. Like its predecessors, this document discusses corporate values and beliefs, but it also contains a disclaimer that "[a]s in prior James River publications on principles, values and beliefs, this statement is an expression of goals and aspirations and does not create a contract of contractual obligation of benefit by James River, not does it limit in any way James River's rights as an employer." The court sustains James River's Motion Craving Oyer on the ground that all five documents form the basis of and govern Spiller's claims.

In order to recover, Spiller must establish that the provisions contained in the documents tendered to the court constitute the enforceable terms of that contract. Spiller concedes that no formal written employment contract was ever executed between the parties. Spiller contends, however, that the various statements contained in the Strategy Statements and Benefits Book constitute an enforceable contract of

employment. James River counters that the statements in the documents fail to express the certainty or specificity necessary for a binding offer of a contract.

Virginia follows the common law employment at-will doctrine. *See e.g., Conrad v. Ellison-Harvey Co.,* 120 Va. 458, 466, 91 S.E. 763 (1917). Under this doctrine, an employer may discharge an employee at any time for any reason or for no reason at all without incurring liability for wrongful discharge. *Hoffman Specialty Co. v. Pelouze,* 158 Va. 586, 164 S.E. 397 (1932). A general hiring where the term of employment is not specified is presumed to be terminable at-will. *Id.* This presumption, however, may be rebutted. *Sea-Land Service Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982). To overcome the presumption of at-will employment, an employee must come forward with evidence of employment for a definite term. *Progress Printing Co., Inc. v. Nichols,* 244 Va. 337, 340, 421 S.E.2d 428, 429 (1992).

Although Virginia's Supreme Court has not specifically addressed the precise question of whether provisions contained in employee handbooks or other company policy documents distributed to employees can become enforceable terms of an employment agreement, it is clear that it would do so in an appropriate case. The Court did consider the contents of a personnel manual utilized by the employer in *Miller v. SEVAMP, Inc.,* 234 Va. 462, 362 S.E.2d 915 (1987). The SEVAMP manual stated that it was the employer's policy to retain conscientious and loyal workers, but also stated that an employee could be "dismissed at the discretion of the Executive Director." *Id.* at 464, 362 S.E.2d at 916. This latter provision was found by the Court to be a clear expression of the employer's intent to create an at-will relationship and was a significant factor in its decision to affirm the trial court's dismissal of the employee's wrongful termination claims. *Id.* at 467, 362 S.E.2d at 918. In addition, Virginia's Supreme Court has held that a memorandum distributed by the employer to employees promising severance pay constituted an offer which the employee accepted by the employee's continued employment. *Hercules Powder Co. v. Brookfield,* 189 Va. 531, 53 S.E.2d 804 (1949). More recently, the Virginia Supreme Court addressed the enforceability of a statement contained in an employee handbook in *Progress Printing, supra.* There, the employee sought to overcome the employer's claim of at-will employment by reference to the company's employee handbook, which stated that the company would not discharge or suspend an

employee "without just cause." *Id.* at 339, 421 S.E.2d at 429. Although the Court ultimately ruled that this provision had been superseded by a subsequent at-will acknowledgement form signed by the employee, it clearly did not reject the employee's use of the handbook to overcome the at-will presumption. In fact, the Court stated that "a termination for cause provision used to overcome the presumption of employment at will *must* be in an employee manual or other document which complies with the statute of frauds." *Id.* at 341, 421 S.E.2d at 430.

Finally, Virginia federal district courts applying and interpreting Virginia law have held that statements contained in employee handbooks may be used by the employee to rebut the presumption of at-will employment. *See Thompson v. American Motor Inns, Inc.*, 623 F. Supp. 409 (W.D. Va. 1985) (employee could demonstrate that employee handbook constituted an offer of benefits in exchange for continued labor and that assent is evidenced by the employee's reading and understanding the handbook, and working in accordance with its terms); *Barger v. General Electric Co.*, 599 F. Supp. 1154 (W.D. Va. 1984); *Frazier v. Colonial Williamsburg Foundation*, 574 F. Supp. 318 (E.D. Va. 1983).

In addition, Virginia's Supreme Court has clearly recognized the traditional elements of contract formation. Before a contract can be formed, there must be an offer and an acceptance. *See e.g., Dulany Foods, Inc. v. C. M. Ayers*, 220 Va. 502, 513, 260 S.E.2d 196 (1979). The concept of a unilateral contract where one party makes a promissory offer and the other accepts by performing an act has also been recognized. *See e.g., Richmond Engineering & Mfg. Corp. v. Loth*, 135 Va. 110, 115 S.E. 774 (1923). Applying this approach to the instant case, an employer's manual that contained a definite promise by the employer not to discharge employees except for cause could be treated as an offer of a unilateral contract by the employer that if accepted by the employee's continued performance would modify the employment at will relationship. *See e.g., Hercules Powder Co., supra.*

Courts in other jurisdictions faced with claims similar to that in the instant case in which employees contend that an employee handbook or policy statement created enforceable contractual rights have applied traditional requirements for contract formation. *See e.g., Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983). Under this approach, the requisites for contract formation, offer, acceptance, and consideration are necessary predicates to establishing that policies in

the documents are part of Spiller's employment contract. To create enforceable contractual rights, the documents must contain language that a reasonable employee would construe as an offer. *See e.g., Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314 (1987) (holding that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present.") This is consistent with Virginia contract law requiring that promises, to be enforceable, meet a certain degree of definiteness. *See e.g., Chang v. First Colonial Savings Bank*, 242 Va. 388, 391, 410 S.E.2d 928 (1991) ("[w]here the offer is clear, definite, and explicit, and leaves nothing open for negotiation, it constitutes an offer, acceptance of which will complete the contract.") (citations omitted). Applying this precept of standard contract law, courts in other jurisdictions have held that general policy statements, such as "employees who work for this company can expect a high degree of job security," are not sufficiently specific to constitute a legally binding offer. *Pine River State Bank v. Mettille. See also, Fournier v. U.S. Fidelity & Guar. Co.*, 569 A.2d 1299, 1302, *cert. denied*, 573 A.2d 1337 (1990) (following language in handbook did not alter at-will status of plaintiff's employment: "It is our firm belief that your skills, work experience, education, and potential will enable you to contribute to the success of USF&G. We equally believe that we as a Company can provide you with the opportunity for both professional and career advancement"); *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081 (Wash. 1984) (en banc) (language in employer's Policy and Procedure Guide that terminations would be made in a "fair, reasonable, and just" manner was insufficient to create an implied obligation to discharge only for cause); *Patrowich v. Chemical Bank*, 470 N.Y.S.2d 599, aff'd 483 N.Y.S.2d 659 (1984) (court noted that manual contained only general policy statements and supervisory guidelines. It made no reference to any precise term of employment, nor did it require good cause for discharge). In addition, vague or nonspecific job security language contained in employee manuals has been held insufficient to overcome the presumption that the contract is terminable at-will. *See e.g., Lofton v. Wyeth Labs., Inc.*, 643 F. Supp. 170 (E.D. Pa. 1986) (plaintiff alleged that his termination breached the employment contract established by employment manual. The manual states that the employer would treat employees fairly, encourage employees to talk with supervisors about problems, and allow employees to take decisions to upper levels of

management for review. District court noted that the manual did not include a provision guaranteeing employees just cause dismissal, and thus did not change plaintiff's at-will employment status).

Inasmuch as Spiller is relying exclusively on the language contained in the James River documents in his attempt to establish the existence of a contract containing termination only for cause, the resolution of whether the language used rises to the level of a contract is one of law for the court to decide. *See e.g., Meade v. Wallen*, 226 Va. 465, 311 S.E.2d 103 (1984).

The dispositive issue is whether James River, speaking through the Strategy Statements and Benefits Book, made a definite and specific offer to Spiller not to discharge him except for good cause. A careful examination of the Strategy Statements and Benefits Book reveals that they do not contain any statements that are sufficiently definite to create a binding offer that employees would be terminated only for cause.

The statements on which Spiller relies in the Strategy Statements pertaining to job security and fairness are not binding promises. As noted above, these documents address a host of corporate issues, such as James River's corporate objectives, values and beliefs, and business and financial plans. The few statements dealing with job security are not definite offers, but rather were made in the context of James River's "vision of the future" and "desired state" of employee relations. Such precatory language, expressing James River's expectations and hopes for employment relationships falls short of an expression of an offer of a unilateral contract of employment which could be terminated only for cause. For example, the statements in the 1984 Strategy Statement's discussion of James River's "Jobs First" philosophy ("to create and maintain secure, safe and productive jobs") and its ethical standards ("Highest standards of integrity, ethics, and fairness must override in all transactions and relationships") do not possess the definiteness and specificity required to constitute a promise that employees will be terminated only for cause. Similarly, the 1988 Strategy Statement speaks of job security in the context of a "desired state" which represents James River's "vision of the future." This language of future, desired state of employee relations does not satisfy the requirements of an offer. In addition, the 1990 Strategy Statement defines job security only in terms of "goals" and "objectives" to be achieved at some uncertain future date. Such statements do not express

the certainty or the specificity required for a binding offer of a contract to exist. Finally, the 1992 Strategy Statement contains no statements that even address the issue of employment termination.

In regard to the Benefits Book, Spiller argues that the reference to three grounds upon which a salaried employee may be terminated involuntarily constitute a promise by James River that these are the exclusive grounds of involuntary termination. It is true that the Benefits Book discusses the severance benefits payable to a terminated employee only in the context of termination for misconduct, inability to perform the job, and job elimination. The question is whether this failure to address the severance benefits payable to an employee who is terminated without cause amounts to an implied promise that employees will be terminated only for cause.

The language at issue is non-promissory, but merely a declaration of the severance benefits available upon termination on the specific grounds. The Benefits Book neither promises employees that they will only be terminated for cause nor in any way limits James River's ability to dismiss employees. The Benefits Book simply sets forth criteria for obtaining benefits. The fact that the Benefits Book does not specifically address the severance benefits available when an employee is terminated without cause is insufficient as a matter of law to form the basis of an enforceable agreement that Spiller could be terminated only for cause.

Because the documents do not contain, expressly or by clear implication, any representations that either limits James River's legal right to terminate Spiller's employment or specifies a definite duration of Spiller's employment services, the demurrer to Count I is sustained.

In Count II of the Motion for Judgment, Spiller asserts that his employment contract with James River contained a covenant of good faith and fair dealing, and that this covenant was breached by the termination of his employment. Spiller argues that his contract contains such a covenant because James River's Strategy Statements state that the company strives to abide by the "[h]ighest standards of integrity, ethics and fairness . . . in all transactions or relationships."

Virginia law does not recognize a claim for breach of a covenant of good faith and fair dealing. Virginia Circuit courts that have considered such claims have consistently rejected them. For example, in *Burton v. Central Fidelity Bank*, 14 Va. Cir. 159 (1988), Judge Sweeney held that the court could find "no authority to support this

theory [covenant of good faith] in employment contract action in the State. It is not consistent with the termination at-will presumption and contradicts the mutuality concept." *Id.* at 161. Accordingly, the demurrer to Count II is sustained.

In Count III of the Motion for Judgment, Spiller claims that James River is estopped from denying the existence of a contract. Spiller's promissory estoppel claim is based upon the same language in the documents relied upon in his breach of contract claim. Spiller claims that these documents made a representation to him that his employment would not be terminated without just cause, he was nevertheless terminated without just cause and as a result he suffered a detriment of not being able to pursue other employment.

Spiller's promissory estoppel claim is based upon the same language as his breach of contract claim. This court has ruled that the documents did not create a just cause termination contract. For the same reasons, the documents do not constitute a promise of non-termination except for cause upon which Spiller could have reasonably relied. Accordingly, the demurrer as to Count III is sustained.

For the foregoing reasons, the demurrer is sustained.